412 P.2d 581

**IDAHO PUBLIC UTILITIES COMMISSION, Plaintiff-Respondent,**

v.

**V–I OIL COMPANY, Defendant-Appellant.**

**No. 9678.**

Supreme Court of Idaho.
March 28, 1966.

416

Albaugh, Bloem, Smith & Pike, Idaho Falls, for appellant.

Allan G. Shepard, Atty. Gen., and Larry D. Ripley, Asst. Atty. Gen., Boise, for respondent.

SMITH, Justice.

This is an appeal from an order of the Idaho Public Utilities Commission revoking the motor carrier operating rights of appellant, V–1 Oil Company, and from the Commission's order denying a rehearing.

On or about January 15, 1964, appellant submitted to Idaho Public Utilities Commission (hereafter sometimes referred to as the Idaho Commission), an instrument in the form of an affidavit of appellant's secretary-treasurer stating the conclusion that appellant, "is not subject to the operating authority granted by the Interstate Commerce Commission." On May 8, 1964, the Idaho Commission filed a complaint with itself, alleging that appellant had failed to file its operating authority as an interstate carrier granted by the Interstate Commerce Commission, or an affidavit of exemption therefrom, as required by I.C. § 61–802B,[1] and set the matter for hearing.

---

1. On and after January 1, 1964, it shall be unlawful for any interstate carrier of persons or property to operate upon the public highways of this state without first having registered with the Idaho public utilities commission his operating authority granted by the interstate commerce commission or an affidavit of exemption therefrom. Such registration shall be granted annually upon application, without hearing, upon payment of the filing fee prescribed in section 61–812, Idaho Code, as amended.

Such registration shall be revoked by the Idaho public utilities commission upon revocation of the operating authority by the interstate commerce commission.

On June 4, 1964, appellant's counsel wrote to the Interstate Commerce Commission, requesting (1) whether the Interstate Commerce Commission issued affidavits of exemption from Commission operating authority, and (2) whether it had given its Boise, Idaho, district director authority to issue such affidavits of exemption. The federal Commission, through its Bureau of Motor Carriers, replied:

"It has become rather common for Bureau representatives in the field to provide information of this nature for the use of those States that require carriers operating therein to provide evidence of operating authority granted by this Commission or that operations are performed under an exemption provision for which operating authority is not required. Where requests for such information are received field supervisors of this Bureau or other responsible Bureau representatives are authorized to inform the inquirers or those concerned that the carrier has indicated that it is engaged in transportation either as a private carrier or within an exemption provided in the Interstate Commerce Act, if that be the case. Advice is further given that motor carriers in either of these categories are subject to regulation by the Commission only as to safety and hours of service of drivers. * * *"

The parties stipulated that the Idaho Commission will accept a form letter addressed to it signed by the federal Commission's district director or by a representative of the Commission's Bureau of Motor Carriers, as compliance with I.C. § 61–802B, which letter the Idaho Commission "construes to be an affidavit of exemption as required by * * * the Idaho Code," the body of such letter, reading as follows:

"The motor carrier listed above has certified to this office that it is engaged in transportation in interstate commerce under the following classification

Section 203(a) (17) Private Carrier ——
Section 203(b) Exempt Carrier ——

"Carriers in this classification are subject only to the Motor Carrier Safety Regulations."

The Idaho Commission thereupon found that the requirement of an "affidavit of exemption", as required by I.C. § 61–802B, "is interpreted to mean a letter of exemption [set forth above] from the Interstate Commerce Commission;" also, that appellant had refused to apply to the federal Commission for such a letter, which the Commission will supply to a qualified carrier requesting such letter. The Idaho Commission thereupon entered its Order No. 7624, dated January 5, 1965, revoking appellant's operating rights in Idaho.

On February 24, 1965, the Idaho Commission, upon entering its Order No. 7666, denying appellant's petition for a rehearing,

**420**

found that appellant had offered no new evidence; also, under the Commission's interpretation of I.C. § 61–802B, appellant had continued in its refusal to supply the "letter of exemption" from the Interstate Commerce Commission and was in violation of I.C. § 61–802B.

Appellant assigns as error the Idaho Commission's interpretation of "affidavit of exemption," required by I.C. § 61–802B, to mean a letter, as aforesaid, from the Interstate Commerce Commission.

Appellant contends that the legislature knew that the Interstate Commerce Commission did not issue affidavits of exemption and that therefore the legislature must have intended that the carrier would furnish and file such an affidavit, thus to comply with the statutory requirement. We do not determine whether a proper affidavit filed by the carrier would constitute compliance with the statute.

 construction given a statute by executive or administrative officers of the state is entitled to great weight and will be followed by the court unless there are cogent reasons for holding otherwise. Services, Inc. v. Neill, 73 Idaho 330, 252 P.2d 190 (1953); McCall v. Potlatch Forests, 69 Idaho 410, 208 P.2d 799 (1949); Breckenridge v. Johnston, 62 Idaho 121, 108 P.2d 833 (1940); Ada County v. Bottolfsen, 61 Idaho 363, 102 P.2d 287 (1940).

██ The primary function of the appellate court in construing a statute is to ascertain the legislative intent and give effect thereto. Knight v. Employment Security Agency, 88 Idaho 262, 398 P.2d 643 (1965); Messenger v. Burns, 86 Idaho 26, 382 P.2d 913 (1963); Lebrecht v. Union Indemnity Co., 53 Idaho 228, 22 P.2d 1066, 89 A.L.R. 640 (1933).

██ An examination of I.C. § 61–802B shows that the legislature intended that an interstate carrier, operating upon public highways in this state, must register with the Idaho Public Utilities Commission its operating authority granted by the Interstate Commerce Commission, or acceptable evidence, in the form of an affidavit, if exempted from regulation by the federal Commission. However, that section of the statute must be construed in pari materia with I.C. § 9–315 which inter alia, provides that acts of the United States may be proved "by the records of the departments of the United States, certified by the heads of those departments respectively," and the documents in the departments of the United States government may be proven "by the certificate of the legal custodian thereof."

We are not here concerned with the method of registration with the Idaho Commission of an interstate carrier's operating authority granted by the Interstate Commerce Commission; but rather with a meth-

od, other than by an affidavit, acceptable to the Idaho Commission, whereby the carrier may show that it is exempted from the requirement of operating authority granted by the federal Commission. Hence the issue is whether the Interstate Commerce Commission, through its district director, or its Bureau of Motor Carriers, may certify, by a method acceptable to the Idaho Commission, the absence of an interstate carrier's operating authority granted by the federal Commission or, stated another way, that the carrier is exempted therefrom.

■ We are constrained to the view that the showing which the Idaho Commission would accept of appellant's exemption from regulation by the Interstate Commerce Commission, to be furnished by its district director or its Bureau of Motor Carriers, is authorized by I.C. § 9–315, and is acceptable as a prima facie showing of appellant's exempt status. That showing is from the federal agency empowered to regulate appellant as an interstate carrier and to exempt it from regulation so long as it carries on in an exempt status.

■ Appellant assigns as error the finding of the Idaho Commission to the effect that it has authority to regulate and issue operating right and authority to an interstate private carrier (appellant being a private carrier).

Appellant asserts that inasmuch as the Constitution of the United States gives to the Congress exclusive control over interstate commerce, U.S.Constitution, Art. I, § 8, a state may only interfere with the free flow of commerce when such interference or regulation is reasonably and primarily adopted to promote the health, safety and morals of the public; and that the only purpose of I.C. § 61–802B, requiring an interstate carrier to file its operating authority of the Interstate Commerce Commission with the State of Idaho or to file an "affidavit of exemption" therefrom, is so that the Idaho Commission "may investigate and determine whether or not an interstate carrier is operating in accordance with the laws and regulations of the United States of America," appellant contending that by authority of U.S.C.A., Tit. 49, § 304(c), the United States has preempted that area.

The Idaho Commission, in the enforcement of I.C. § 61–802B, is merely carrying out the directive of the legislature that interstate carriers who use the highways of this state must register with the Commission their operating authority granted by the federal Commission, or exemption therefrom. The law does not cast upon the. Idaho Commission the .duty to determine, whether the carrier is operating in accordance with the laws and. regulations of .the United States.

While the legislative purpose of I.C. § 61–802B is not therein defined, nevertheless

the purpose of such a statute rests in the police power of the state. That view is supported by Lloyd A. Fry Roofing Co. v. Wood, 344 U.S. 157, 73 S.Ct. 204, 97 L.Ed. 168 (1952); that case involved the construction of § 11 of the Arkansas Motor Act,[2] which required a motor contract carrier to obtain a permit issued by the Arkansas Public Service Commission.

In that action, as in the case at bar, the interstate private carrier was transporting its own interstate shipments on the highways of Arkansas. The Arkansas Commission, in enforcement of the Arkansas Act, had caused the arrest of several of the driver-owners of trucks which the carrier had leased. The carrier contended that since it was a private interstate carrier, the state law could not be applied so as to require it to have a permit issued by the Arkansas Commission. The carrier also contended that the requirement of the state permit unduly burdened interstate commerce and invaded a field of regulation preempted by the United States. In upholding the Arkansas Public Service Commission in requiring the private carrier to obtain a permit issued by the Commission, as a prerequisite to the carriers' use of the highways of that state, the United States Supreme Court said:

" * * * It [Arkansas] has asked these driver-owners to do nothing except apply for a permit as contract carriers are required to do by the state Act. * * * The state asserts no power or purpose to require the drivers to do more than register with the appropriate agency. Such an identification is necessary, the Commission urges, in order that it may properly apply the state's valid police, welfare, and safety regulations to motor carriers using its highways. * * * In this situation our prior cases make clear that a state can regulate so long as no undue burden is imposed on interstate commerce, and that a mere requirement for a permit is not such a burden. * * * At present we hold only that Arkansas is not powerless to require interstate motor carriers to identify themselves as users of that state's highways." 344 U.S. at 161–162, 73 S.Ct. at 206–207, 97 L.Ed. at 172.

See also Annot. 97 L.Ed. 175.

▬▬▬ Lastly, appellant asserts that I. C. § 61–802B is discriminatory in that the intrastate carrier is not required to meet the registration requirements of the Idaho Commission as does the interstate carrier; nor is the intrastate carrier required to pay the $5.00 charge for registration of operat-

---

2. "No person shall engage in the business of a contract carrier by motor vehicle over any public highway in this State unless there is in force with respect to such car- rier a permit issued by the Commission, authorizing such persons to engage in such business. * * *" Ark.Acts 1941, No. 367 at 937, 947–948.

ing authority as does the interstate carrier, I.C. § 61–812.

It is recognized that local objectives, such as curtailing competition, or to produce more revenue, cannot be accomplished by burdens upon interstate commerce. Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935); Anderson v. Mullaney, 191 F.2d 123, 13 Alaska 332 (9 Cir. 1951). It is recognized that a state may not promote its own economic advantages by curtailment or burdening of interstate commerce. Baldwin v. G. A. F. Seelig, Inc., supra; H. P. Hood & Sons v. Du Mond, 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949); Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948).

On the other hand, a state may enact a non-discriminatory regulation for the purpose of insuring the public safety and convenience, which imposes upon interstate carriers a license fee no larger in amount than is reasonably required to defray the expense of administering the regulations. Sprout v. City of South Bend, 277 U.S. 163, 48 S.Ct. 502, 72 L.Ed. 833 (1928); Union Brokerage Co. v. Jensen, 322 U.S. 202, 64 S.Ct. 967, 88 L.Ed. 1227 (1944); Hale v. Bimco Trading, Inc., 306 U.S. 375, 59 S.Ct. 526, 83 L.Ed. 771 (1939). The states, in the exercise of their police power, may enact statutes to protect the public health, morals, safety and public convenience con-current with the laws passed by Congress in the exercise of its jurisdiction over the same subject, provided such laws are local in their character and affect interstate commerce only incidentally or indirectly and do not conflict with provisions of the federal legislation. Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265 (1946); Union Brokerage Co. v. Jensen, supra; Edwards v. People of State of California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941); Clason v. State of Indiana, 306 U.S. 439, 59 S.Ct. 609, 83 L.Ed. 858 (1939).

"It has always been held that 'interstate business must pay its way'. Nippert v. [City of] Richmond, supra [327 U.S. 416, 66 S.Ct. 586, 90 L.Ed 760], 327 U.S. at page 425, note 14, 66 S.Ct. at page 590. It may be required to pull its own weight in the State's internal economy." Anderson v. Mullaney, supra, 191 F.2d at 130.

We are constrained to the view that the requirements of I.C. § 61–802B rest within the police powers of the state in the enforcement of its health, welfare, and safety regulations and that the annual fee of $5.00 required to be paid by I.C. § 61–812 is not intended as a revenue measure, nor to curtail competition nor otherwise to burden interstate commerce, but intended only for the purpose of payment of costs of administration. Appellant, while attacking the validity of the fee imposed on interstate carriers by I.C. § 61–812 as unreasonably

burdening interstate commerce, nevertheless, has failed to sustain the burden of showing that such fee has no reasonable relation to the increased cost of maintenance and policing due to such traffic. That burden rests upon appellant. Aero Mayflower Transit Co. v. Board of R. R. Com'rs, 332 U.S. 495, 68 S.Ct. 167, 92 L.Ed. 99 (1947).

The orders of the Idaho Public Utilities Commission are affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, TAYLOR and SPEAR, JJ., concur.