639 P.2d 442

**In the Matter of the Consideration of the Advertising Standards set Forth in Sections 113(b)(3), 113(b)(5) and 303(b)(2) of the Idaho Public Utility Regulatory Policies Act of 1978.**

**IDAHO POWER COMPANY, Appellant Cross-Respondent,**

v.

**The IDAHO PUBLIC UTILITIES COMMISSION and the Committee for Fair Rates, Respondents Cross-Respondents,**

and

**The Idaho Citizens Coalition, Respondent Cross-Appellant.**

**INTERMOUNTAIN GAS COMPANY, Appellant Cross-Respondent,**

v.

**The IDAHO PUBLIC UTILITIES COMMISSION, Respondent Cross-Respondent,**

and

**The Idaho Citizens Coalition, Intervenor Cross-Appellant.**

Nos. 13869, 13870.

Supreme Court of Idaho.

Dec. 30, 1981.

Barton L. Kline, Larry D. Ripley & Robert M. Tyler, Jr. of Elam, Burke, Evans, Boyd & Koontz, Boise, for appellant-cross respondent Idaho Power Co.

T. N. Ambrose of Moffatt, Thomas, Barrett & Blanton, Boise, for appellant-cross-respondent Intermountain Gas Co.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., John J. McMahon and Michael S. Gilmore, Deputies Atty. Gen., for respondent cross-respondent Idaho Public Utilities Commission.

Peter C. Wagstaff, Coeur d'Alene, for respondent-intervenor Committee for Fair Rates.

Raymond C. Givens, Coeur d'Alene, for Idaho Citizens Coalition, respondent in 13869 and intervenor cross-appellant in 13870.

McFADDEN, Justice.

On November 9, 1978, President Carter signed the Public Utility Regulatory Policies Act of 1978, 16 U.S.C. § 2601 *et seq.*, hereinafter referred to as PURPA or the Act. 16 U.S.C. § 2631(a) authorizes any electric consumer (among others) to intervene and participate as a matter of right in any rate making proceeding or other appropriate regulatory proceeding relating to rates or rate design which is conducted by a state regulatory authority. 16 U.S.C. § 2632(a)(1) establishes the electric utilities' liability to compensate such consumer intervenors for certain fees and costs incurred to prepare and advocate their positions. The section further provides that a consumer may collect such fees and costs in a civil action unless the state regulatory authority has adopted a reasonable procedure for determining the amount of and for including an award of, such fees and costs in its order in the proceeding. 16 U.S.C. § 2632(a)(2).

The instant appeals brought by Idaho Power and Intermountain Gas, and the cross appeal of the Idaho Citizens Coalition, place at issue the Idaho Public Utilities Commission's authority to promulgate rules and regulations providing for the compensation to intervenors for attorney fees and costs incurred in PURPA proceedings and then making an award pursuant to the promulgated procedure in a subsequent proceeding. In order to fully understand the nature and scope of this issue it is necessary to first review the scheme of PURPA, and then discuss the proceedings conducted by the Commission and the challenged orders which it issued.

PURPA, by virtue of its Titles I and III (16 U.S.C. § 2611 *et seq.*) required that state regulatory authorities undertake a comprehensive review of several policies affecting regulated electric and natural gas utilities. 16 U.S.C. §§ 2621–2627 required state regulatory authorities to consider whether it would adopt six ratemaking standards (*see* 16 U.S.C. § 2621(d)), five other unrelated standards (*see* 16 U.S.C. § 2623(b)), and the standard concerning lifeline rates (*see* 16 U.S.C. § 2624).

Among the five standards of 16 U.S.C. § 2623(b) is the standard relating to utility advertising and transmittal of information to consumers. *See* 16 U.S.C. §§ 2623(b)(3) and 2625(f).

Pursuant to 16 U.S.C. § 2623(a), the Commission was required to conduct public hearings to decide whether to adopt the standards enumerated in § 2623(b), including the standard relating to utility advertising and transmittal of information to consumers. As in the consideration of all other standards listed in subtitle B of Title I, the proceeding to consider this standard was subject to subtitle C's provisions concerning intervention and judicial review. The pertinent sections are 16 U.S.C. §§ 2631 and 2632.

2631. "INTERVENTION IN PROCEEDINGS.

(a) AUTHORITY TO INTERVENE AND PARTICIPATE.—In order to initiate and participate in the consideration of one or more of the standards established by subtitle B or other concepts which contribute to the achievement of the purposes of this title, the Secretary [of Energy], any affected electric utility, or any electric consumer of an affected electric utility, may intervene and participate as a matter of right in any ratemaking proceeding or other appropriate regulatory proceeding relating to rates or rate design which is conducted by a state regulatory authority . . . ."

2632. "CONSUMER REPRESENTATION.

(a) COMPENSATION FOR COSTS OF PARTICIPATION OR INTERVENTION.—(1) If no alternative means for assuring representation of electric consumers is adopted in accordance with subsection (b) and if an electric consumer of an electric utility substantially contributed to the approval, in whole or in part, of a position advocated by such consumer in a proceeding concerning such utility, and relating to any standard set forth in subtitle B, such utility shall be liable to compensate such consumer (pursuant to paragraph (2)) for reasonable attorneys' fees,

expert witness fees, and other reasonable costs incurred in preparation and advocacy of such position and such proceeding (including fees and costs of obtaining judicial review of any determination in such proceeding with respect to such position).

(2) A consumer entitled to fees and costs under paragraph (1) may collect such fees and costs from any electric utility by bringing a civil action in any State court of competent jurisdiction, unless the State regulatory authority ... has adopted a reasonable procedure pursuant to which such authority ...

(A) determines the amount of such fees and costs, and

(B) includes an award of such fees and costs in its order in the proceeding.

(3) The procedure adopted by such State regulatory authority ... under paragraph (2) may include a preliminary proceeding to require that

(A) as a condition of receiving compensation under such procedure such consumer demonstrate that, but for the ability to receive such award, participation or intervention in such proceeding may be a significant financial hardship for such consumer, and

(B) persons with the same or similar interests have a common legal representative in the proceeding as a condition to receiving compensation.

(b) ALTERNATIVE MEANS.—Compensation shall not be required under subsection (a) if the State [or] the State regulatory authority ... has provided an alternative means for providing adequate compensation to persons—

(1) who have, or represent, an interest—

(A) which would not otherwise be adequately represented in the proceeding, and

(B) representation of which is necessary for a fair determination in the proceeding, and

(2) who are, or represent an interest which is, unable to effectively participate or intervene in the proceeding because such persons cannot afford to pay reasonable attorneys' fees, expert witness fees, and other reasonable costs of preparing for, and participating or intervening in, such proceeding (including fees and costs of obtaining judicial review of such proceeding)."

In response to the requirements of PURPA, the Commission has conducted several generic proceedings. Among the earlier proceedings was a proceeding to consider promulgation of intervenor funding rules. This proceeding, entitled "In the Matter of Compensation for Consumer Intervenors in PURPA–Related Proceedings," Case No. P–300–10, culminated in the adoption of intervenor funding rules in Order No. 15121.

These rules generally provided for the compensation of selected consumer intervenors found by the Commission to have contributed to a given PURPA-related proceeding. The Commission would determine eligibility under the rules, and could set ceilings on the maximum amount of an intervenor's expenses which would be recoverable. Under the rules, the Commission could limit the rate of legal and expert compensation to that commensurate with prevailing rates in the northwest for like kind and quality of service. The compensation would be assessable against each electrical utility affected by the proceeding and a formula for assessment based on total retail kwh sales was included in the rules. Idaho Power and Intermountain Gas had notice of this proceeding; however, no objections were entered nor were any requests for rehearing made or appeals taken from Order no. 15121.

Later, in Case No. P–300–13, the PURPA standards concerning utility advertising and information to consumers were considered. Among the five non-ratemaking standards set forth in PURPA, only two, those concerning advertising and termination of service, relate to natural gas as well as electrical utilities. Therefore, at the initiation of Case No. P–300–13, the Commission ordered consideration of the advertising standard combined for both electrical and natural gas utilities. Two weeks later, the Commission issued Order No. 15120 stating that the

scope of Case No. P–300–13 would be expanded beyond the PURPA minimum to include consideration of whether the information to consumers standard would apply to natural gas utilities as well as to electrical.

The Idaho Citizens Coalition (ICC) petitioned to intervene in Case No. P–300–13, and applied for intervenor funding. Objections to such funding were filed by Idaho Power Company and Washington Water Power. Additional petitions to intervene in this proceeding were filed by Intermountain Gas Company and the Committee for Fair Rates (CFR). The CFR also applied for intervenor funding. All petitions to intervene were granted.

The Commission issued Order No. 15255 in January, 1980, ruling on the application for intervenor funding. The Commission determined that ICC and CFR were essentially representing a common interest in the proceeding and compensation under the Intervenor Funding Rules would be limited to expenses incurred if they shared common legal representation, expert witnesses, and other resources. The Commission also set a general ceiling on intervenor compensation at $5,850 plus travel and lodging expenses, thereby adopting a CFR estimate and rejecting ICC's estimate of $18,000 as the cost of intervention.

In May, 1980, Order No. 15518 was issued in Case No. P–300–13, adopting advertising and information to consumer rules. This order also addressed the question of intervenor compensation stating that, pursuant to the Intervenor Funding Rules adopted in Order No. 15121 and the determinations made in Order No. 15255, ICC and CFR were to file a joint memorandum of costs including therein the fees or rates at which experts and attorneys were to be paid, that the utilities could then file any objections, and that the Commission would determine the assessment of allowable costs among the participating electrical and natural gas utilities. Recognizing that the Intervenor Funding Rules spoke only of reapportionment of costs among electrical utilities, the Commission ruled that it would itself determine actual assessment of costs, and this was later accomplished by translating therms into kwh for use in the funding rule's formula.

Insofar as it relates to this appeal, Idaho Power and Intermountain Gas applied for rehearing in regard to the award of compensation to the intervening consumer groups. In the meantime ICC submitted, as required, a memorandum concerning costs which included an affidavit contending in part that a rate of $75 per hour for legal representation was just and reasonable.

The Commission in June, 1980, issued Order No. 15607 which, *inter alia*, refused to accept ICC's compensation figure and instead determined that an appropriate rate for legal representation would be $50 per hour. This order also granted the requests for rehearing submitted by the utilities, and requested those utilities to supply briefs particularly addressing the issues (1) whether Order No. 15121 adopting the Intervenor Funding Rules was a final and conclusive order under I.C. § 61–625 and thus binding upon those utilities receiving notice and failing to appeal or file for rehearing; (2) whether Congress had the power under the Commerce and Supremacy Clauses to authorize intervenor funding independent of or contrary to state law, and, if so, whether it had through PURPA; and (3) whether the Idaho Supreme Court had recognized as a matter of state law that administrative agencies could promulgate rules concerning attorney fees to parties appearing before such agencies. The Commission expressly excluded consideration of questions relating to the constitutionality of PURPA or any of its provisions.

In response to Order No. 15607, ICC petitioned for rehearing from the decision to limit compensation for legal services to a rate of $50 per hour, and also sent interrogatories to the utilities inquiring about the rates of compensation of their attorneys. The utilities objected to the questions at the time, and ICC moved to compel response. The Commission then issued Order No. 15654 granting ICC's petition for rehearing, requesting briefs from the parties, and re-

quiring answers to the interrogatories. The order also required the Commission staff to prepare and send similar interrogatories to counsel for ICC.

Pursuant to the rehearing granted the utilities by Order No. 15607 on the question of authority to compensate intervenors generally and that granted the intervenors by Order No. 15654, the Commission issued Order No. 15742 affirming the earlier decisions. The Commission determined that the utilities were bound by the Intervenor Funding Rules adopted in Order No. 15121 since that order was final and conclusive and, though notice was had, none of the utilities sought review by rehearing or appeal. The Commission also concluded that Congress gave the Commission, through PURPA, the authority to provide for compensation of intervenors in PURPA-related proceedings, though this authority was limited to awards against electrical utilities only. And the Commission decided that it had the power under state law to promulgate rules concerning attorney fees by means of general rule-making authority provided by statute and recognized by decisional law.

In regard to the question of the proper rate of compensation for ICC's legal representation, the Commission determined that the prevailing rates in the northwest for like kind and quality of legal service supported its decision to limit the rate to $50 per hour.

Idaho Power appeals from those portions of Orders No. 15518 and 15742 concerning Commission authority to award intervenor funding. Intermountain Gas appeals from these orders on similar grounds, additionally noting the unique position of natural gas utilities under the PURPA provisions here involved. ICC cross-appeals the decision of the Commission, embodied in Orders No. 15607 and 15742, to limit intervenor legal compensation to the rate of $50 per hour.

The issues on direct appeal focus on three interrelated areas: the effect of the earlier uncontested order adopting the intervenor funding rules; the alleged authority of the Commission under state law to promulgate rules governing the award of attorney fees and costs to intervenors or to actually make such awards; and the alleged authority of the Commission under PURPA to promulgate such rules or to actually make an award. Additionally, the cross appeal presents an issue within the context of the adopted intervenor funding rules should they be found valid: whether the Commission may limit an award of attorney fees as it did in Case No. 15742. Further, several of the parties seek attorney fees on appeal.

## INTERMOUNTAIN GAS APPEAL

■ Regarding the direct appeal of Intermountain Gas, the court is in agreement with the Commission's concession on appeal that it erred in assessing attorney fees and the costs of ICC's and CFR's participation in Case No. P–300–13 against Intermountain Gas. The Commission erred in this regard by virtue of the fact that the language of its own intervenor funding rules applied only to electric utilities. Thus, Intermountain Gas, a natural gas utility, should not have been held liable for an award of intervenor funding.

## IDAHO POWER APPEAL

(a) Permissibility of Idaho Power's Collateral Attack of Order No. 15121

The Commission argues that Idaho Power should have challenged the adoption of the intervenor funding rules in Order No. 15121 by direct appeal from that order. The Commission contends that the instant appeal from Orders Nos. 15518 and 15742 amounts to an impermissible collateral attack of Order No. 15121. We disagree.

■ Although I.C. § 61–625 provides that "[a]ll orders and decisions of the commission which have become final and conclusive shall not be attacked collaterally," its proscription is inapplicable to this case. As the court recognized in *Utah-Idaho Sugar v. Intermountain Gas Co.*, 100 Idaho 368, 374, 597 P.2d 1058 (1979), "an administrative order may generally be collaterally attacked when the issuing agency lacks jurisdiction over the matter considered . . . ." Idaho Power challenges the Commission's

authority to promulgate intervenor funding rules, and such alleged error under the foregoing rule does render Order No. 15121 of the Commission vulnerable to collateral attack.

(b) Authority of Commission to Issue Orders 15121, 15518 and 15742 Under State Law

The next question to be considered is whether the Commission has authority under state law to adopt intervenor funding rules, and make an award of attorney fees and costs, in connection with PURPA proceedings. The Commission contends that its authority to supervise and regulate utilities pursuant to I.C. § 61–501[1] and its authority to adopt rules of practice and procedure pursuant to I.C. § 61–601[2] encompass the authority to promulgate intervenor funding rules. We decline to follow the construction of these statutes as advocated by the Commission in view of the long line of authority in this state holding that (1) the Commission has only that jurisdiction conferred to it by the legislature and (2) attorney fees may be awarded only where specifically provided by statute or contract.

■ Because the Commission was created by statute, the Commission has no jurisdiction other than that which the legislature has specifically granted to it. *Washington Water Power Co. v. Kootenai Environmental Alliance*, 99 Idaho 875, 879, 591 P.2d 122, 126 (1979). *Accord, United States v. Utah Power & Light Company*, 98 Idaho 665, 570 P.2d 1353 (1977); *Lemhi Tel. Co. v. Mountain States Tel. & Tel. Co.*, 98 Idaho 692, 571 P.2d 753 (1977). The Commission therefore exercises limited jurisdiction, with nothing being presumed in favor of its jurisdiction. *Id.* As the court stated in *Washington Water Power Company, supra*,

"[a]s as general rule, administrative authorities are tribunals of limited jurisdiction and their *jurisdiction is dependent entirely upon the statutes reposing power in them* and they cannot confer it upon themselves, although they may determine whether they have it. If the provisions of the statutes are not met and compliance is not had with the statutes, no jurisdiction exists." (Emphasis added.) 99 Idaho at 879, 591 P.2d at 126.

■ A review of Idaho Code Ch. 5, title 61, reveals the complete absence of any section which would empower the Commission to either adopt rules governing compensation for consumer intervenors in proceedings related to PURPA or to actually award any such compensation in the form of attorney fees or costs. It is true that I.C. § 61–501 empowers the Commission to supervise and regulate every public utility in the state and to do all things necessary to carry out the spirit and intent of the provisions of the public utilities law, and it is equally true that I.C. § 61–601 empowers the Commission to adopt rules of practice and procedure to so carry out the spirit and intent of the provisions of the public utilities law. However, it would be inappropriate to construe those provisions to authorize the Commission to compensate consumer intervenors in the absence of a specific statute to that effect. This is especially true in light of the general rule that attorney fees cannot be recovered in an action unless authorized by statute or by express agreement of the parties. *Kidwell v. Fenley*, 96 Idaho 534, 531 P.2d 1179 (1975); *Mecham v. Nelson*, 92 Idaho 783, 451 P.2d 529 (1969). *See*, 20 C.J.S. Costs § 218, p. 455. The court has taken the same position on the power to grant costs. The right to recover costs is statutory, and no cost can be granted without statutory authorization. *Hen-*

1. I.C. § 61–501 reads as follows:

"Investment of authority.—The public utilities commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in the state and to do all things necessary to carry out the spirit and intent of the provisions of this act."

2. I.C. § 61–601 reads as follows:

"Practice—Evidence.—All hearings and investigations before the commission or any commissioner shall be governed by this act and by rules of practice and procedure to be adopted by the commission, and in the conduct thereof neither the commission nor any commissioner shall be bound by the technical rules of evidence."

derson v. Cominco American, Inc., 95 Idaho 690, 518 P.2d 873 (1973); Harrison v. Pence, 79 Idaho 377, 318 P.2d 1096 (1957). See I.C. § 12–101. This authorization is for the courts, not the Commission.

The Idaho Legislature has authorized the award of attorney fees in only a few clearly defined circumstances. Idaho Code §§ 12–120 and 12–121 allow the courts to set attorney fees in civil damage suits under certain conditions. Notably, by adopting IRCP 54(e)(1), the court has restricted the award of attorney fees under § 12–121 to those cases brought, pursued or defended frivolously, unreasonably or without foundation. The legislature has allowed for attorney fees in other very limited contexts: for the wrongful dishonor of a check under I.C. § 28–3–510A; under the Consumer Protection Act, I.C. § 48–608(3); recovery by personal representative for services on behalf of a decedent's estate under I.C. § 15–3–710; I.C. § 32–704 delineates the responsibility for a spouse's attorney fees in a divorce proceeding; attorney fees for unreasonable refusal to honor insurance claim under I.C. § 41–1839; for violation of state securities law, I.C. § 30–1446; in actions for wages due to an employer, I.C. § 45–605; in actions involving proceedings brought under the Workmen's Compensation Act, I.C. § 72–803. See, Reasonable Attorneys Fees in Idaho, 11 Idaho Law Review 279 (1975).

■ From the foregoing statutes, it is clear that the Idaho legislature has provided for the award of attorney fees specifically when it so intends, and only when it so intends. The same is true for costs. It follows therefore that the broad language of I.C. §§ 61–501 and 601 do not empower the Commission to award any compensation in the form of costs for consumer intervenors in PURPA related proceedings.

The Commission argues in the alternative that the cases of Kerr v. Department of Employment, 97 Idaho 385, 545 P.2d 473 (1976), and White v. Idaho Forest Industries, 98 Idaho 784, 572 P.2d 887 (1977), stand for the proposition that an administrative agency may, on its own initiative and without statutory authorization adopt narrowly tailored rules providing for an award of attorney fees or other costs to participants appearing in proceedings before the agency. We disagree.

Both Kerr and White arose from claims for unemployment compensation presented to the Department of Employment, appealed to the Industrial Commission and then appealed to this court. In both cases this court awarded payment of attorney fees pursuant to a regulation of the Department of Employment providing for attorney fees for claimants who are successful upon appeal before this court. 97 Idaho at 387, 545 P.2d at 475; 98 Idaho at 788, 572 P.2d at 891. However, in neither Kerr nor White did the court determine that the Department of Employment's administrative regulation allowing for attorney fees and costs rested on the enabling legislation of that administrative agency. Nor did the court address the question whether an administrative agency could by its own rule or regulation and in the absence of specific statutory authority allow for the award of attorney fees or other costs. The Commission admits this fact in its brief; and in our view this admission is the crux of the matter. A review of the briefs submitted in both Kerr and White reveal that no challenge was made by the parties concerning an award of attorney fees; the reason being that the attorney fees in those cases were paid, not by the employers, but by the Department itself, out of its own funds. Thus viewed, Kerr and White have no bearing on the issue presented in this case of whether the Commission has authority to award attorney fees and costs to intervenors against a utility.

Additionally, it is to be noted that the statutory framework involving the Department of Employment in Kerr and White differs significantly from the statutory framework involving the Commission, in this case. In White the Department of Employment regulations provided for the award of attorney fees to attorneys representing claimants on appeal to the state Supreme Court from a decision which re-

versed a prior decision in their favor. In *Kerr* the court awarded attorney fees without reference to any department regulation. However, under the employment security laws, Idaho Code Title 72, providing the statutory backdrop for the appeals in both *White* and *Kerr*, there appears to be implied statutory authority for an allowance of attorney fees and costs in proceedings before the Industrial Commission, Department of Employment or an appeal to the courts. I.C. § 72–1375(b) is illustrative of such authority:

"No individual claiming benefits shall be charged fees or costs of any kind in any proceeding under this act by the commission, the director, any of its or his employees or representatives, or by any court or any officer thereof .... Any individual claiming benefits in any proceeding before the director or the commission or his or its representatives or a court may be represented by counsel or other duly authorized agent; but no such counsel or agent shall either charge or receive for such services more than an amount approved by the commission ...."

See also I.C. § 72–804 (employer shall pay reasonable attorney fees in addition to other compensation where such employer has unreasonably contested claim, unreasonably discontinued payment of compensation, etc.). Thus, the court's awarding of attorney fees in both *Kerr* and *White* was the result of a statutory framework designed for the peculiar needs and circumstances of claimants for unemployment compensation benefits. Such protections, including the award of attorney fees, are clearly statutory. These two cases therefore do not provide any support for the contention that the Commission may promulgate rules for attorney fees based on the broad language of I.C. § 61–501 and 601.

Similarly, the cases of *Consumers Lobby v. Public Util. Com'n*, 25 Cal.3d 891, 160 Cal.Rptr. 124, 603 P.2d 41 (1979), and *Mountain States Tel. & Tel. Co. v. Public Util. Com'n*, 195 Colo. 130, 576 P.2d 544 (1978) (en banc), do not support the Commission's contentions. These cases involve, respec-

tively, the utilities commissions of California and Colorado. In *Consumers Lobby* the court addressed the issue whether the state utilities commission had authority to award attorney fees and costs to public interest participants in quasi-judicial reparation proceedings. The California court concluded that its utilities commission has jurisdiction to award attorney fees in quasi-judicial reparation proceedings but not in quasi-legislative rate making proceedings. The crucial difference between *Consumers Lobby* and this case is that the California utilities commission "*is a state agency of constitutional origin with far-reaching duties, functions and powers.* (Cal.Const. art. XII §§ 1–6)." 160 Cal.Rptr. at 132, 603 P.2d at 49. By contrast, the Idaho Commission is strictly a statutory creation under I.C. § 61–201. In California the utilities commission is in effect a co-ordinate branch of government under the state constitution with far greater powers than the Idaho Commission. This fundamental difference between the statutes makes *Consumers Lobby* inapposite.

*Mountain States, supra*, is likewise inapposite because the Colorado Commission, like California's, has a broad constitutional base of authority:

"Colorado Const. Art. XXV has granted to the Commission authority to issue certificates of public convenience and necessity .... This is a legislative function ... and, until the General Assembly restricts it, the Commission has as much authority as the legislature possessed prior to the adoption of Article XXV in 1954." 596 P.2d at 547.

The court went on:

"The power to authorize the award of attorneys' fees and other legal costs in cases tried before administrative bodies is generally accepted as a *fundamental legislative prerogative.* Under our constitution, the legislative authority in public utility matters has been delegated to the PUC and the legislature has not by any statutory enactment restricted it in the matter of awarding attorney fees and other legal costs." *Id.*

In Colorado the commission has even broader constitutional powers than the California commission. Thus, neither *Consumers Lobby* nor *Mountain States, supra,* has relevance to the scope of the Idaho Commission's legislative grant of powers.

Finally, we consider the contention that the Idaho legislature has implicitly approved the passage of the intervenor funding rules by way of non-objection to them, pursuant to I.C. §§ 67–5217 and 5218. These two statutory provisions provide a procedure for legislative review of all rules promulgated by any state agency. Relevant to this case is the provision in I.C. § 67–5218 that "failure [of the legislature] to report [on rules submitted to it for review] shall constitute legislative approval of the rules as submitted." That section further provides that "[e]very rule promulgated *within the authority conferred by law* and in accordance with the provisions of chapter 52, Title 67, Idaho Code, shall be in full force until the same is rejected, amended or modified by the legislature." (Emphasis added.) It is undisputed that the legislature took no action with regard to the Commission's intervenor funding rules. However, by the very terms of I.C. § 67–5218, in order for the legislature's non-objection to the rules to constitute legislative approval of them, the Commission in the first instance must have been acting within its grant of authority in promulgating the rules. Inasmuch as we have determined that the Commission is without authority under state law to promulgate intervenor funding rules allowing costs and attorney fees, the legislative failure to object to their promulgation is an irrelevant consideration as to the validity of the rules.

(c) Authority of Commission to Issue Orders Nos. 15121, 15518 and 15742 Under Federal Law

The next issue to be considered on appeal is whether Congress intended through its enactment of PURPA to confer on the Commission the authority to promulgate intervenor funding rules and to make such awards in PURPA-related proceedings independent of any state authority to so act. While both the Commission and Idaho Power agree that the federal standards set forth in PURPA, 16 U.S.C. §§ 2621–2627, are not binding upon state utility commissions, the two parties disagree as to whether § 2632 of Title 16, U.S.C., concerning intervenor funding, was intended to require state utility commissions to award intervenor funding despite a lack of authority under state law to so act. Simply stated, the Commission argues that Congress intended to preempt this field of regulation, while Idaho Power argues the contrary. For the reasons discussed below, we are in agreement with the argument advanced by Idaho Power.

The provisions in PURPA relating to intervention and judicial review are set forth in 16 U.S.C. §§ 2631–2634. Section 2632(a)(1) provides in part that if no alternative means for assuring representation of electric consumers is adopted under § 2632(b) and if an electric consumer

"substantially contributed to the approval, in whole or in part, of a position advocated by such consumer in a proceeding concerning such validity, and relating to any standard set forth in subchapter II of this chapter, such utility shall be liable to compensate such consumer ... for reasonable attorneys' fees, expert witness fees, and other reasonable costs incurred in preparation and advocacy of such position."

While section 2632(a)(2) states that an electric consumer entitled to fees and costs may collect them from the utility by bringing a civil action unless the state utility commission has adopted a procedure for making such awards; the question of the validity and hence the ability of an electric consumer to bring such an action is not before the court and any comment thereon would be *dicta.*

In our opinion the language of 16 U.S.C. § 2632 does not require; nor, more importantly, does it confer any authority upon the Commission. Congress has left to the discretion of the Commission, assuming preexisting State authority, or to the legislature in the case of § 2632(b), whether it

will act or not. Such permissive language is irreconcilable with the applicability of the doctrine of federal preemption in this instance.

The construction of § 2632 adhered to today is consistent with the fundamental rule that statutes "must be construed as a whole, without separating one provision from another." *First Am. Title Co., Inc. v. Clark*, 99 Idaho 10, 12, 576 P.2d 581 (1978); *Norton v. Department of Employment*, 94 Idaho 924, 500 P.2d 825 (1972); *Stucki v. Loveland*, 94 Idaho 621, 495 P.2d 571 (1972). In this context it is to be observed that sections 2621(a), 2621(c)(1), 2623(a)(1), 2623(a)(2), 2624(a) and 2627(b) all recognize the state utility commissions' power to continue to apply state law in the regulation of electric utilities. The only construction of § 2632 which is consistent with the aforementioned statutory provisions is that § 2632 requires utilities to pay consumer intervenors' fees and costs only in PURPA-related proceedings conducted by state utility commissions which have independent state authority to award intervenor funding. This construction is the only way to reconcile § 2632 with the strong language in §§ 2621–2627 that makes state law an integral part of ratemaking for electric utilities. Under this construction of § 2632, the Commission had no authority to issue Orders Nos. 15518 and 15742 purporting to require Idaho Power to pay the intervenor's attorney's fees and other costs in Case No. P–300–13, nor did the Commission have the authority to adopt intervenor funding rules in Order No. 15121.

Given this determination, there is no reason to reach the challenges of Idaho Power concerning the constitutionality of § 2632. As the court stated in *Curtis v. Child*, 95 Idaho 63, 68, 501 P.2d 1374 (1972), "[it] will not pass on questions of constitutionality unless it is absolutely necessary to do so in order to determine the merits of the case."

## CROSS APPEAL OF IDAHO CITIZENS COALITION

As mentioned earlier, the cross appeal of ICC presented an issue only within the context of the adopted intervenor funding rules being found to be valid, i.e., whether the Commission may properly limit the award as it did here. Inasmuch as the Commission lacked the jurisdiction it assumed in making the award, the question of whether it may properly limit such an award is mooted.

Orders Nos. 15121, 15518 and 15742 are set aside. All requests for attorney fees on appeal are denied. Costs to appellants Idaho Power and Intermountain Gas.

BAKES, C. J., and DONALDSON and SHEPARD, JJ., concur.

BISTLINE, Justice, dissenting.

The real issue in this case, which is simply not addressed by the majority, is whether a state administrative agency can award attorney's fees in carrying out a federal statute which provides for such awards. *Every case and authority cited by the majority* is irrelevant to this issue. I completely agree that it is the general rule that "attorney fees cannot be recovered in an action unless authorized by statute or by express agreement of the parties." However, in the present action, *all parties agree that attorney's fees are authorized by statute.* Thus, the inclusion of much authority as to the general rule may only lead to confusion.

To my mind the *awarding* of attorney's fees, as opposed to creating a *right* to attorney's fees, is strictly procedural. The Court is hardly in a position to say otherwise, having promulgated what it denominates as a "procedural" rule which purports to govern the *awarding* of attorney's fees, *see* I.R.C.P. Rule 54(e), while at the same time recognizing that only the legislature or private parties, through contracts, may create a *right* to attorney's fees. *Id. See Kidwell v. Fenley*, 96 Idaho 534, 531 P.2d 1179 (1975). I am at a loss to understand how the Court can characterize the *awarding* of attorney's fees as procedural in its own system, but substantive when an administrative agency makes the award *pursuant to a statute which creates a right to attorney's fees.*

As the majority notes, the IPUC's statutory authority includes I.C. § 61–501, which provides:

"Investment of authority.—The public utilities commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in the state and to do all things necessary to carry out the spirit and intent of the provisions of this act."

I.C. § 61–601 provides:

"Practice—Evidence.—All hearings and investigations before the commission or any commissioner shall be governed by this act and by rules of practice and procedure to be adopted by the commission, and in the conduct thereof neither the commission nor any commissioner shall be bound by the technical rules of evidence."

Since the IPUC is statutorily authorized to adopt rules of practice and procedure, and is "vested with power and jurisdiction to supervise and regulate every public utility in the state . . .," I.C. § 61–501, I would hold that the adoption of *procedural* rules governing the award of statutorily authorized attorney's fees in an otherwise valid IPUC proceeding is well within the IPUC's jurisdiction and authority. Furthermore, while the majority is correct in stating that the IPUC may not create new authority or jurisdiction for itself by submitting rules to the appropriate legislative committee, *see* I.C. §§ 67–5217, 5218, the lack of objection to these rules by the legislature does establish that the *legislative mind* understood the rules to be procedural, and properly promulgated in pursuit of the IPUC's statutory authority.

Finally, the fact that it is a federal statute which creates the right to attorney's fees under these circumstances, and not a state statute, does not change the analysis. The statute clearly creates a right to attorney's fees for services performed in state administrative proceedings. 16 U.S.C. § 2632(a). The statute then states that these fees may be recovered "in any State court of competent jurisdiction, unless the State regulatory authority . . . has adopted a reasonable procedure pursuant to which such authority . . . (A) determines the amount of such fees and costs, and (B) includes an award of such fees and costs in its order . . . ." 16 U.S.C. § 2632(a)(2)(A) and (B). State courts considering a federally created right of action are bound by the federal law of attorney's fees associated with the federal right. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 2507, 65 L.Ed.2d 555 (1980). A federal statute may properly create a right to attorney's fees for services performed before a state administrative agency in furtherance of a federal statute. *See New York Gaslight Club, Inc., v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). As a general rule, rights created by federal law are enforceable by the state courts in the absence of federal legislation creating exclusive jurisdiction in the federal courts, or a federal legislative pattern which by necessary implication is so pervasive as to preclude jurisdiction in the state courts. *See United States v. Bank of New York & Trust Co.*, 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936); *Lockridge v. Amalgamated Ass'n of Street Elec. Ry. & Motor Coach Employees of America*, 84 Idaho 201, 369 P.2d 1006 (1962). Where the federal law specifically contemplates enforcement by state administrative agencies, the same principle applies. *See New York Gaslight Club, supra.* Furthermore, principles of comity and federalism support the PUC's efforts to implement PURPA in the most efficient and cost-effective manner. "Federalism does not preclude cooperative action between the two sovereigns when the interests of both state and nation are thereby served." *Gereau v. Henderson*, 526 F.2d 889, 894 (5th Cir. 1976).

Although I agree that the statute at issue here does not purport to *require* state public utilities commissions to adopt rules governing attorney's fee awards, it clearly contemplates that the public utilities commissions *might* promulgate procedural rules governing the awarding of fees in these specific PURPA proceedings, and in fact encour-

ages them to do so by specifying criteria to be used in awarding such fees.[1]

Since the awarding of attorney's fees is a procedural matter, unless the Court is prepared to hold that PURPA may not be implemented by the IPUC *at all*, I would not bar the IPUC from awarding the attorneys fees which the statute creates a right to.

I respectfully dissent.

1. Obviously, a great deal of time and expense could be saved for all parties involved if the IPUC, to which all of the intervenor's work is presented, also evaluates and awards attorney's fees for that work. To force intervenor's to bring a separate action in state court is duplicative, wasteful and unnecessary.