751 P.2d 107

**IDAHO FAIR SHARE, Appellant,**

v.

**IDAHO PUBLIC UTILITIES COMMISSION, Respondent,**

and

**Washington Water Power Co., Intervenor.**

**No. 16469.**

Supreme Court of Idaho.

Feb. 17, 1988.

Charles Sheroke, Coeur d'Alene, and Daniel W. Meek, (argued), Portland, Or., for appellant.

Jim Jones, Atty. Gen., for respondent. Michael S. Gilmore, Deputy Atty. Gen., argued.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, for intervenor Washington Water Power Co. Robert E. Neate, argued.

## ON DENIAL OF PETITION FOR REHEARING

The opinion of Oct. 29, 1987 is withdrawn and this opinion is substituted therefor.

BISTLINE, Justice.

Idaho Fair Share is a non-profit consumer and environmental protection citizen organization funded primarily through membership dues and contributions. Washington Water Power (WWP) is an investor-owned utility which provides electric service to customers in Washington and Idaho.

In 1983, WWP initiated a rate case, No. U-1008-185, before the Public Utility Commission to apply for an increase in WWP's charges to customers. Idaho Fair Share intervened in that rate case, and alleged that WWP's rates improperly included costs pertaining to its investment in the Washington Public Power Supply System (WPPSS) Washington Nuclear Project No. 3. Thereupon, the IPUC placed WWP on formal notice that its continued involvement in WNP-3 would become an issue in that rate case. WWP responded to the IPUC's notice by moving to sever WNP-3 issues from the rate case on the grounds that the IPUC's notice presented planning and contract questions, not rate questions. The Commission responded to WWP's motion by creating Case U-1008-204, in which Fair Share was also an intervenor. In Case U-1008-204, Fair Share submitted testimony through its expert witnesses that differed from the Commission staff's

and witness's positions and that was in opposition to WWP's positions with regard to several matters.

During the course of this WNP-3 proceeding, the legislature enacted I.C. § 61-617A which authorizes the payment of intervenor legal fees and costs. The statute became effective on July 1, 1985. On November 13, 1985, Fair Share filed a timely application for intervenor compensation.

Fair Share's application requested compensation for the efforts of two attorneys, one expert witness and for the research costs of Fair Share's director. The application totaled in excess of $53,000. Fair Share sought the statutory maximum of $20,000.

The Commission addressed the substantive issue of ratemaking treatment for WWP's investment in WPPSS Plant No. 3 and Fair Share's application in Order No. 20208. The Commission found that Fair Share had substantially and materially contributed to the Commission's decision, specifically noting that the intervenor's "excellent brief fully justifies award of some intervenor funding." R., p. 471.

However, the Commission also found that not all of the work for which Fair Share sought reimbursement was relevant to the Commission's decision. The amount it awarded was slightly less than $10,000. The Commission specifically refused to compensate Fair Share for any work performed prior to July 1, 1985, the effective date of I.C. § 61-617A. Neither WWP nor the Commission dispute the reasonableness of hourly fee rates submitted by Fair Share's expert and attorneys. The Commission reaffirmed its decision in Order No. 20266. R., pp. 570-79.

Fair Share's appeal presents the following issues for review:

1. Whether the standard of appellate review of the Commission's interpretation of the intervenor compensation statute is provided by the Administrative Procedure Act, I.C. § 67-5215(g), or I.C. § 61-629.

2. Whether the Commission erred by failing to consider any of Fair Share's legal

fees and costs incurred prior to July 1, 1985, the effective date of I.C. § 61–617A.

3. Whether the Commission properly exercised its discretion in awarding legal fees and costs only for those efforts of fair share it deemed relevant to its decision.

For reasons discussed below, we affirm in part, reverse in part, and remand for further proceedings.

### I.

Fair Share argues that our review of the Commission's application of the intervenor compensation statute is controlled by the standards of review appropriate under the Administrative Procedure Act, *Idaho Code* Title 67, Chapter 52. The Commission counters by stating that the Court's role is limited by the deferential standard contained in I.C. § 61–629 as interpreted in *Intermountain Gas Co. v. Public Utilities Commission*, 97 Idaho 113, 540 P.2d 775 (1975). Neither position is correct.

The Administrative Procedure Act, by the express terms of its provision for judicial review, excludes the Public Utilities Commission and the Industrial Commission:

**Judicial Review of Contested Cases—(a)** A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case of an agency *other than the industrial commission or the public utilities commission* is entitled to judicial review under this act. I.C. § 67–5215 (emphasis added). *See also, Application Hayden Pines Water Co.*, 111 Idaho 331, 335, note 1, 723 P.2d 875, 878, note 1 (1986).

The standard of review contained in I.C. § 61–629 is also inapplicable. The statute provides as follows:

The review on appeal shall not be extended further than to determine *whether the commission has regularly pursued its authority*, including a determination of whether the order appealed from violates any right of the appellant under the Constitution of the United States or of the State of Idaho. I.C. § 61–629. (emphasis added)

Title 61, Chapter 5 of the *Idaho Code* details the matters that are within the authority of the Commission:

The public utilities commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in the state and to do all things necessary to carry out the spirit and intent of the provisions of this act. I.C. § 61–501.

It is apparent that the Commission's authority is generally supervisory and regulatory. The detailed provisions of Title 61, Chapter 5, demonstrate that the legislature has delegated primarily ratemaking and oversight powers to the Commission. *See Washington Water Power Co. v. Kootenai Environmental Alliance*, 99 Idaho 875, 882, 591 P.2d 122, 129 (1979). The standards, urged upon us by the Commission, that are derived from *Intermountain Gas, supra*, are inapplicable. That case reviewed orders of the Commission that *set rates* and divested the utility of its appliance business.

Here, however, we review the Commission's interpretation and construction of I.C. § 61–617A, the intervenor compensation statute, which is not a ratemaking nor a supervisory matter. While myriad cases state that the construction given a statute by an administrative agency is entitled to great weight, *see Kopp v. State*, 100 Idaho 160, 163, 595 P.2d 309, 312 (1979) (*see* cases cited within); *Public Utilities Commission v. V–1 Oil Co.*, 90 Idaho 415, 420, 412 P.2d 581, 586 (1966) (*see* cases cited within), the proposition is commonly stated with the proviso that the administrative construction will not be followed if there are cogent reasons for holding otherwise. *Id.* In addition, there are two unanimous decisions of this Court which establish the position that whether an administrative construction is correct is ultimately a question for judicial decision. *Ware v. State Tax Commission*, 98 Idaho 477, 481, 567 P.2d 423, 427 (1977); *Compensation Co. v. Hubbard*, 70 Idaho 59, 62, 211 P.2d 413, 416 (1949).

Finding that there are cogent reasons for straying from the Commission's reading of the statute and recognizing that

the construction of a statute is matter of law for the judiciary, we will apply the standard of free review to the Commission's interpretation of I.C. § 61–617A to which we now turn.

## II.

Fair Share contends that the Commission erred by failing to consider any of Fair Share's legal fees and costs incurred prior to July 1, 1985, the effective date of I.C. § 61–617A. We agree.

The Commission counters with the prohibition of I.C. § 73–101 against retroactive application of statutes unless expressly so declared. This position misses the point. If the Commission had issued its decision and order prior to July 1, 1985, thereby completing the WNP–3 proceeding, Fair Share would be advocating a retrospective application of the statute.

But this was not the case. Order No. 20208 was issued January, 1986; the final order, No. 20266, was issued February 14, 1986. Therefore, the proceeding was pending before the Commission when the intervenor compensation statute took effect on July 1, 1985. Fair Share contends that these circumstances dictate a *prospective* application to a current proceeding. This position finds support from three sources: (1) the wording of the statute itself, (2) cases dealing with other attorney's fees statutes, and (3) a California case very much on point with the facts of this case.

The plain wording of the statute supports Fair Share. The first paragraph provides:

(1) It is hereby declared the policy of this state to encourage participation *at all stages of all proceedings before the commission* so that all affected customers receive full and fair representation in those proceedings. I.C. § 61–617A (Supp.1987) (emphasis added).

On July 1, 1985, the WNP–3 proceeding was a proceeding "before the commission." Efforts expended before July 1, 1985, were part of "*all* stages of *all* proceedings"

before the Commission. It is the express policy of the statute to encourage participation in by intervenors by awarding all or a portion of the costs of intervention. This very broadly worded declaration of policy inevitably brought the WNP–3 proceeding, and Fair Share's participation, within the statute's ambit.

Closely analogous Idaho cases support Fair Share. The leading case is *Jensen v. Shank*, 94 Idaho 565, 585 P.2d 1276 (1978). There, Justice Bakes, writing for a unanimous Court which included myself and Justices Shepard and Donaldson, held that the district court did not err in awarding attorney's fees pursuant to I.C. § 12–121:

The application of I.C. § 12–121 to a claim for relief which arose prior to the enactment of that section but tried after the section became law *is not an improper retroactive application of that section since we view its provision as remedial and procedural* and not as affecting the substantive claim for relief. 99 Idaho at 566–67, 585 P.2d at 1277–78 (citations omitted) (emphasis added).

Subsequent cases have consistently upheld application of I.C. § 12–121 to cases commenced but not yet decided when the statute took effect. *See Wheeler v. McIntyre*, 100 Idaho 286, 596 P.2d 798 (1979); *Buckalew v. City of Grangeville*, 100 Idaho 460, 600 P.2d 136 (1979); *Idaho Quarterhorse Breeders Association, Inc. v. Ada County Fair Board*, 101 Idaho 339, 612 P.2d 1186 (1980). Significantly, *Jensen* and its progeny did not distinguish between efforts expended prior to or following the effective date of I.C. § 12–121.

The *Jensen* language quoted above is equally applicable to I.C. § 61–617A. The intervenor compensation statute is similarly remedial and procedural. Indeed, the statute is found in Chapter 6 of Title 61 entitled "*Procedure* Before Commission and in Courts." (emphasis added)

The California Supreme Court, when confronted with implementing a very similar statute [1], ruled that it is not a retrospective application to make fee awards in pending

1. Cal.Pub.Util.Code §§ 1801–1808.

cases, *Southern California Gas Co. v. Public Utilities Commission*, 38 Cal.3d 64, 211 Cal.Rptr. 99, 695 P.2d 186 (1985). The court stated that passage of an attorney's fee statute while utility cases are pending supplies the authority *nunc pro tunc* to award fees despite prior contrary *judicial* precedent. *Id.* 211 Cal.Rptr. at 101, 695 P.2d at 188. The California court made no distinction between efforts expended prior to or following the effective date of the statute.

In an earlier case, *Consumers Lobby Against Monopolies v. Public Utilities Commission*, 25 Cal.3d 891, 160 Cal.Rptr. 124, 603 P.2d 41 (1979), the court held that the commission lacked the power to award intervenor fees and costs in ratemaking proceedings. This parallels the situation in Idaho. In *Idaho Power Co. v. Idaho Public Utilities Commission*, 102 Idaho 744, 639 P.2d 442 (1981), we held that absent specific statutory authorization, the Commission lacked authority, pursuant to I.C. §§ 61–501 and –601, to award compensation to consumer intervenors in Public Utility Regulatory Policies Act of 1978 hearings. The similar legal backdrop in both states, and the result and reasoning obtained in the California cases, cuts against the Commission's argument here that the prohibition against intervenor funding judicially declared in *Idaho Power Co., supra,* prevents the award of fees and costs for efforts expended prior to July 1, 1985.

Accordingly, we reverse and remand to the Commission for a consideration of appropriate fees and costs incurred by Fair Share prior to July 1, 1985.

### III.

Finally, we consider whether the Commission properly exercised its discretion in awarding legal fees and costs only for those efforts of Fair Share it deemed relevant to its decision. With one exception, we conclude that it did.

The wording of I.C. § 61–617A makes it evident that the Commission is vested with the discretion to award attorney's fees and costs:

(2) The commission *may* order any regulated ... utility to pay all *or a portion* of the costs of one or more parties for legal fees, witness fees, and reproduction costs, not to exceed a total for all intervening parties combined of twenty thousand dollars ($20,000) in any proceeding before the commission. I.C. § 61–617A (Supp.1987) (emphasis added).

The decision of the adjudicating body awarding fees will not be overturned absent an abuse of discretion. *Hellar v. Cenarrusa*, 106 Idaho 571, 682 P.2d 524 (1984) (reviewing an award of fees under I.C. § 12–121).

The Commission specifically refused to compensate 32 hours of computer modeling billed by consulting economist Jim Lazar and 42 hours of attorney time for Linda K. Williams devoted to research of a settlement agreement negotiated between the Bonneville Power Administration (BPA) and the investor-owned utilities participating in the WPPSS No. 3 plant. The Commission concluded that these efforts of Fair Share were not relevant to its decision. R., pp. 472, 573. This is another way of saying that this portion of Fair Share's work did not materially contribute to the decision rendered by the Commission. *See* I.C. § 61–617A(2)(a).

The Commission found that the 32 hours of Jim Lazar went primarily to producing tables that were stricken from the record. R., p. 471. It also found that attorney Williams' 42 hours spent on the BPA settlement agreement were not relevant to the resolution of the case. R., p. 573. A review of the orders that contained the Commission's decision demonstrates that the BPA settlement was not mentioned nor relied on. As a result we cannot say that the Commission abused its discretion in refusing to compensate these hours of Lazar and Williams.

On a different footing are 42 hours of work by Lazar and 12 hours of work by Williams spent responding to Order No. 20208. In that Order, the Commission requested that the parties submit, by February 3, 1986, comments on the portion of the order addressing WPPSS No. 3 and that

Fair Share submit additional information pertaining to intervenor funding. R., pp. 470, 472. These hours were not addressed in the Commission's Final Order No. 20266.

However, Fair Share in its petition for reconsideration, R., p. 580, requested funding based on all the grounds set forth in Fair Share Response to Intervenor Funding Portion of Order No. 20208. *Id.* That document, included affidavits by Lazar and Williams, that documented the 12 hours of Williams and the 42 hours of Lazar that were spent responding to Order No. 20208. R., pp. 520–22. Those hours, therefore, are properly before this Court, contrary to the assertions of the Commission in its brief. See Key Transportation, Inc. v. Trans Magic Airlines Corp., 96 Idaho 110, 524 P.2d 1338 (1974).

█ Since these hours were not addressed in Order No. 20266, nor in the order denying reconsideration, No. 20353, and since we are remanding this case, we conclude that, on remand, the Commission should consider these additional hours of Lazar and Williams for compensation under the guidelines of I.C. § 61–617A. We affirm the Commission's denial of compensation for the 32 hours of computer modeling by Lazar and the 42 hours spent on the BPA settlement agreement by Williams.

Costs on appeal, not inclusive of attorneys fees, are awarded to appellant, assessed equally against the respondent and intervenor.

DONALDSON * and HUNTLEY, JJ., concur.

BAKES, Justice, concurring in part and dissenting in part:

I

I concur in the result of Part I of the Court's opinion, but disagree with the majority's conclusion that the I.C. § 61–629 standard of review, *i.e.*, that the scope of review on appeal is "whether the commission has regularly pursued its authority," is not the appropriate standard. The setting of intervenor attorney fees in a rate-

making case is certainly a "ratemaking" matter. Those fees are incurred as part of the ratemaking proceeding, and the cost of them will ultimately be included in the utility's overhead which will be part of the utility's costs, which will affect the rates which the utility charges. The I.C. § 61–629 standard is clearly applicable. While I agree with the majority's statement that the proper "construction of a statute is [a] matter of law for the judiciary," once we determine the proper interpretation of a statute involving utility ratemaking, such as the intervenor attorney fee statute, the application of that statute is a part of the ratemaking and oversight-supervisory process before the Idaho Public Utilities Commission, to which the I.C. § 61–629 standard is applicable.

II

I concur in Part II of the Court's opinion which holds that the commission's application of the statute to pre-July 1, 1985, effective date was not a retroactive application of the statute.

III

Since, as set out in Part I above, the appropriate standard on review, in my opinion, is "whether the commission has regularly pursued its authority," I.C. § 61–629, I believe the Commission should be affirmed in its determination of the amount of attorney fees which it allowed.

Even if the Court were correct that the I.C. § 61–629 standard is not applicable, the Court does not explain how the commission erred in its determination of how much fees it would allow. The intervenor attorney fee statute, I.C. § 61–617A, states: "The commission *may* order any regulated ... utility to pay all *or a portion* of the costs of one or more of the parties for legal fees ... [or] costs...." The majority doesn't even acknowledge that the statute gives the discretionary determination to the commission by the use of the word "may." Nor does the Court make an abuse of discretion analysis. Rather, the majority

---

* DONALDSON, J., sat and participated fully in    the decision and opinion prior to his death.

opinion analyzes the statute as though it reads "shall," not "may."

The Court's decision today is inconsistent with this Court's interpretation of the same word "may" in attorney fee statutes applying to the courts. Our interpretation of I.C. § 12–121, prior to the implementation of I.R.C.P. 54(e), was that the trial courts were vested with discretion and this Court would not review that discretion regardless of whether the trial courts granted or denied attorney fees. The statute, I.C. § 67–617A, places the discretion to allow fees in full, in part, or not at all in the commission, not this Court, and accordingly I would affirm the commission's orders entirely.

SHEPARD, C.J., concurs.