# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46840

| | | |
|---|---|---|
| **In Re: Appeal from Decision of the Idaho Workers Compensation Board.** | ) | |
| ------------------------------------------------ | ) | |
| **TRAVELERS INSURANCE CO.** | ) | |
| | ) | |
| **Petitioner-Appellant,** | ) | **Boise, January 2020 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: June 18, 2020** |
| | ) | |
| **ULTIMATE LOGISTICS, LLC,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Respondent-Respondent on Appeal.** | ) | |
| | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Michael J. Reardon, District Judge.

The decision of the district court is affirmed.

Eberle, Berlin, Kading, Turnbow & McKlveen Chtd., for Appellant. Neil D. McFeeley argued.

Armstrong & Kirkendall, Chtd., for Respondent. Lawrence E. Kirkendall argued.

_____

BURDICK, Chief Justice.

Travelers Insurance Co. ("Travelers") appeals the decision of the district court, affirming a final order of the Idaho Department of Insurance in favor of Ultimate Logistics, LLC ("Ultimate"). The Department of Insurance's final order upheld a hearing officer's determination that two mechanics working for Ultimate were improperly included in a premium-rate calculation made by Travelers. In its petition for judicial review, Travelers argued that the Department of Insurance acted outside the scope of its statutory authority in determining that the mechanics could not be included in the premium-rate calculation. The district court rejected this argument. Because we conclude that the district court's ruling was correct, we affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

The National Council on Compensation Insurance ("NCCI") is a rating organization licensed by the State of Idaho pursuant to Idaho Code section 41-1620(1). Every insurer that provides workers' compensation insurance in Idaho is required to be a member of a rating organization such as NCCI. I.C. § 41-1615.

Insurers that are members of a rating organization must adhere to the rating organization's manuals of classification, rules, rates, and rating plans. I.C. § 41-1620(3). NCCI provides a number of services to insurance companies, such as analyzing trends, supplying workers' compensation information, assisting in pricing, analyzing proposed legislation, and preparing insurance rate recommendations. NCCI also publishes several manuals for insurers to follow. One manual, called the "Basic Manual," contains rules governing workers' compensation insurance policies and over 600 classification codes used to classify businesses. Another manual, called the "Scopes Manual," is also used to classify businesses under classification codes. The premium rates for workers' compensation insurance paid by businesses are determined based on the classification code applicable to the business.

When a business is unable to secure workers' compensation insurance on the voluntary market, it can apply to NCCI for an "assigned risk policy." NCCI, as the plan administrator, then assigns an insurance carrier operating in the state to handle the policy. Once an "assigned risk policy" has been assigned to an insurance carrier, the carrier may conduct an audit to determine whether the business and the individuals on its payroll have been classified correctly. Depending on the results of the audit, the premium may be adjusted by the insurance carrier, both retroactively and prospectively.

Every rating organization licensed in Idaho is required to provide any person aggrieved by the application of its rating system to their workers' compensation policy the opportunity to be heard. I.C. § 41-1622(2). NCCI designated the Idaho Workers' Compensation Appeals Board ("Board") to review the claims of persons aggrieved by the application of its rating system. Despite its name, the Board is not a state agency. Rather, the Board operates in conjunction with NCCI, providing an in-person hearing to aggrieved parties after NCCI makes an initial decision. Any party affected by a decision of the Board may appeal the Board's decision to the Idaho Department of Insurance. I.C. § 41-1622(2).

2

The Department of Insurance is a state agency. I.C. § 41-201. The Director of the Department of Insurance is tasked with enforcing the Idaho Insurance Code and may delegate his powers and duties to subordinates. I.C. §§ 41-207, -210(1)–(2).

When the Director appoints a hearing officer to hear an appeal, the hearing officer must issue either a recommended order or a preliminary order under the Idaho Administrative Procedure Act. I.C. § 67-5243. Upon the request of a party, a hearing officer's preliminary decision is reviewable by the Director. I.C. § 67-5245(2)–(3). If an issue is appealed to the Director, he hears the issue and enters a final order. I.C. § 67-5245(6). A final order of the Department of Insurance is, in turn, subject to judicial review. I.C. § 67-5270.

Travelers is a member of NCCI which provides workers' compensation insurance in Idaho. NCCI assigned Travelers to provide an "assigned risk policy" to Ultimate. Travelers audited Ultimate for the year of 2015 and found that Ultimate had been misclassified. Travelers believed Ultimate should have been classified as a trucking company as defined under Classification Code 7219 of NCCI's Scopes Manual. Travelers also determined that two mechanics working with Ultimate should have been included in its premium-rate calculation. Accordingly, Travelers sent an invoice to Ultimate for $39,000 in premiums to make up for the additional risks covered by the policy during the previous coverage periods.

Ultimate disagreed with Travelers' classification of its business and the inclusion of the two mechanics in the premium-rate calculation. Consequently, Ultimate requested NCCI review both determinations. NCCI advised Ultimate that it could not make a determination as to whether the two mechanics were properly included in Travelers' premium-rate calculation. It explained: "NCCI has no jurisdiction over coverage related issues; whether certain workers were included for coverage under your policy. The [insurance] carrier determines whether a worker poses a liability to the policy." As for the classification issue, NCCI explained that Ultimate was appropriately classified as a trucking company and that any mechanics working for the trucking company were correctly classified under Code 7219. NCCI also informed Ultimate of its right to appeal its initial determination to the Board.

Ultimate appealed, requesting a hearing before the Board. After the hearing, the Board agreed with NCCI that Ultimate was properly classified as a trucking company under Code 7219 and that any mechanics included under Ultimate's workers' compensation policy fell under Code

7219. As to whether the two mechanics were required to be covered under the workers' compensation policy, the Board noted the following:

> NCCI advised [Ultimate] prior to the appeals board meeting that the issue of Travelers including the mechanics under [Ultimate's] policy is a coverage issue and is not within the authority of NCCI or the Board to act on. The only issue before the Board is the proper classification of workers covered under the policies.

The Board also informed Ultimate of its right to appeal the decision to the Idaho Department of Insurance.

Ultimate appealed to the Idaho Department of Insurance, and the Department appointed a hearing officer to hear the appeal. Ultimate again argued that Travelers had incorrectly classified it as a trucking company under Code 7219. Ultimate also argued again that the mechanics should not have been included in the premium-rate calculations because the mechanics are independent contractors operating as single member LLCs.

Travelers, on the other hand, argued that the Board correctly determined that Ultimate was properly classified as a trucking company under Code 7219. Travelers also argued the Department of Insurance, like NCCI and the Board, did not have statutory authority to answer the question of whether the mechanics were employees or independent contractors, and by extension, whether they should have been included in the premium-rate calculation.

At the Department hearing, the auditor who conducted the audit for Travelers explained that he included the mechanics in the premium-rate calculation because they were uninsured subcontractors:

> Well, to say that they do not have to purchase Workers' Comp in Idaho is probably a fair statement. But if you refer back to Rule 2-H.2 . . . we are picking them up as uninsured subcontractors. They had no insurance. So they might not have had an obligation to buy Workers' Comp, but they were still uninsured subcontractors.

The Department's hearing officer entered a preliminary order upholding the Board's determination that Ultimate was properly classified as a trucking company under Code 7219. However, the hearing officer determined that the mechanics should not have been included in the premium-rate calculation under Basic Manual Rule 2.H and entered an order to that effect.

Travelers appealed to the Director of the Department of Insurance, and the Director affirmed the hearing officer's preliminary order.

After the Director entered his final order, Travelers sought judicial review in district court. In its petition for review, Travelers argued the Department did not have the statutory authority to determine whether the mechanics were employees or independent contractors. It also argued that the Director's final order was not supported by substantial, competent evidence. Neither Travelers nor Ultimate sought review of the classification of Ultimate as a trucking company under Code 7219.

Shortly after Travelers filed its appeal, Ultimate's counsel filed a motion to withdraw, which was granted. After a new attorney did not appear on behalf of Ultimate within 21 days, Travelers filed a motion for entry of default judgment against Ultimate. The district court reasoned that it would be inappropriate to set aside an agency's final order "based solely on a lack of participation by [Ultimate]," and denied the motion. Consequently, the district court determined it would consider the merits of the appeal based only on the arguments made by Travelers and set the matter for a hearing.

After the hearing was set, an attorney appeared on behalf of Ultimate. Travelers objected, but the district court allowed the appearance and provided Ultimate with 14 days to submit response briefing on the matter.

The district court ultimately concluded that the question of whether the mechanics were employees or independent contractors was moot. It explained that the dispositive question on appeal was "whether the [Department of Insurance] has the statutory authority to determine the proper application of NCCI Basic Manual Rule 2 . . . ." Determining that the Department had such authority, the district court affirmed the Director's final order. The district court also awarded attorney's fees in favor of Ultimate.

The district court entered its final judgment on February 12, 2019, and Travelers timely appealed.

## II.    ISSUES ON APPEAL

1. Did the Idaho Department of Insurance exceed its statutory authority in determining that the mechanics working for Ultimate could not be included in the premium-rate calculation?

2. Is there substantial, competent evidence to support the Department of Insurance's determination that the mechanics were not required to be covered under Ultimate's workers' compensation policy?

3. Did the district court abuse its discretion in allowing an attorney to appear on behalf of Ultimate more than 21 days after Ultimate's original attorney withdrew?

5

4. Did the district court err in awarding attorney's fees to Ultimate?

## III. STANDARD OF REVIEW

The Idaho Administrative Procedures Act ("IDAPA") governs judicial review of an agency action. I.C. § 67-5270(1). "In an appeal from the decision of a district court acting in its appellate capacity under [IDAPA], this Court reviews the agency record independently of the district court's decision." *Lane Ranch P'ship v. City of Sun Valley*, 144 Idaho 584, 588, 166 P.3d 374, 378 (2007) (citing *Friends of Farm to Market v. Valley County*, 137 Idaho 192, 196, 46 P.3d 9, 13 (2002)). However, as a matter of procedure, we review the district court's decision. *917 Lusk, LLC v. City of Boise*, 158 Idaho 12, 14, 343 P.3d 41, 43 (2015) (citing *Williams v. Idaho State Bd. of Real Estate Appraisers,* 157 Idaho 496, 502, 337 P.3d 655, 661 (2014)).

This Court reviews issues of statutory interpretation de novo. *V-1 Oil Co. v. Idaho State Tax Comm'n*, 134 Idaho 716, 718, 9 P.3d 519, 521 (2000) (citing *Thomas v. Worthington*, 132 Idaho 825, 828, 979 P.2d 1183, 1186 (1999)). However, under IDAPA, a reviewing court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." I.C. § 67-5279(1).

IDAPA lists the circumstances under which a reviewing court may set aside the final action of an agency:

> When the agency was required by the provisions of this chapter or by other provisions of law to issue an order, the court shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions are:
>
> > (a) in violation of constitutional or statutory provisions;
> >
> > (b) in excess of the statutory authority of the agency;
> >
> > (c) made upon unlawful procedure;
> >
> > (d) not supported by substantial evidence on the record as a whole; or
> >
> > (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3). Additionally, agency actions will be affirmed "unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4).

6

## IV.    ANALYSIS

**A. The district court did not err in concluding that it was within the Idaho Department of Insurance's statutory authority to determine that the mechanics working for Ultimate could not be included in the premium-rate calculation.**

The district court determined that the Department's final order did not exceed its statutory authority because reviewing the application of a rating system to an insured's policy is within the authority granted to the Department by Idaho Code sections 41-1622 and 41-1623. To determine whether the action of a state agency, such as the Department of Insurance, is in excess of its statutory authority, we must first determine what final action was taken.

1. <u>We need not address whether the mechanics were employees or independent contractors because the Department's final order did not rely upon such a distinction.</u>

The Department's final order affirmed the hearing officer's decision that the mechanics working for Ultimate could not be included in the premium-rate calculation "by virtue of NCCI Basic Manual Rule 2.H.2." Travelers argues that the Department, in reaching its decision, made a determination that the mechanics were not employees, but independent contractors. This, Travelers contends, was outside the scope of the Department's statutory authority. We disagree with Travelers' characterization of the Department's final decision.

In its preliminary order, the hearing officer made several findings of fact relevant to the resolution of this case. First, the hearing officer explained that Travelers' auditor agreed that "the mechanics [were] not employees of Ultimate Logistics and were not required to have workers' compensation insurance in Idaho." However, the auditor also testified that he included the mechanics in the premium-rate calculation because they were "uninsured subcontractors" which could be included under NCCI Basic Manual Rule 2.H.2.

Based on this finding, the hearing officer applied Basic Manual Rule 2.H to determine that the mechanics were improperly included in the premium-rate calculation:

> Travelers conceded through the testimony of [its auditor] that the mechanics were not employees and workers compensation was not required for the mechanics, but could be required to cover these uninsured subcontractors' employees. [The auditor] cited the NCCI Basic Rule 2.H in support of Travelers' position. There is no evidence that either of the mechanics have [sic] any employees. In addition, pursuant to Rule 2.H.1 each of the mechanics purchased their own workers' compensation insurance.
>
> The Hearing Officer concludes the two mechanics are not employees of Ultimate Logistics, are not required by Idaho law to be covered by worker's compensation laws, and they have no

7

> employees. Consequently, Travelers cannot require the payment of a worker's compensation premium for the two mechanics.

In its conclusions of law, the hearing officer determined that the mechanics were independent contractors by applying Idaho Code section 72-102—a statute ordinarily applied in workers' compensation cases before the Idaho Industrial Commission. *See, e.g.*, *Roman v. Horsley*, 120 Idaho 136, 814 P.2d 36 (1991) (applying Idaho Code section 72-102 to affirm an Idaho Industrial Commission determination that an individual was an employee for purposes of a workers' compensation claim). This determination is the source of much disagreement between the parties and was briefed and argued at length on appeal.

However, in its final order, the Director did not rely on the hearing officer's employee vs. independent contractor determination. Rather, the Director clarified that the issue before the hearing officer was not whether the mechanics were employees or independent contractors, but whether Travelers, which treated the mechanics as uninsured subcontractors, correctly included them in the premium-rate calculation under Basic Manual Rule 2.H:

> Travelers' admitted through the testimony of [the auditor] that it did not consider the mechanics to be employees. Instead, Travelers asked the Hearing Officer to conclude that the mechanics were "subcontractors" within the scope of Ultimate Logistics' 7219 classification code by virtue of NCCI Basic Manual Rule 2.H.2. Thus, the Hearing Officer's analysis was directed to the classification of the mechanics as subcontractors.
>     The Preliminary Order presents a well-reasoned analysis of the classification codes proffered by both parties for the purpose of setting Ultimate Logistics' workers' compensation insurance rates. The Hearing Officer did not exceed her jurisdiction in determining that the two onsite mechanics could not be included in calculating Ultimate Logistics' premium rates because they were neither employees nor subcontractors subject to workers' compensation.

Accordingly, as the district court correctly points out in its review of the Director's final order, answering the question of whether the mechanics are employees or independent contractors is not necessary to the disposition of this case. The Director's final order explained that Travelers' own auditor—the one who conducted the audit of Ultimate's payroll—testified before the hearing officer that he treated the mechanics as uninsured subcontractors, not employees. The final order also explained that the auditor applied Rule 2.H.2 in determining that the mechanics, as uninsured subcontractors, were required to be included in the premium-rate calculation. In

concluding the mechanics could not be included in the premium-rate calculation, the Department was interpreting NCCI's Basic Manual Rule 2.H and reviewing Travelers application thereof.

Therefore, the question before this Court is not whether the mechanics working for Ultimate were employees or independent contractors, nor is it whether NCCI or the Department of Insurance has the statutory authority to make such a determination. The auditor's classification of the mechanics as uninsured subcontractors determines those issues for the purposes of this case. Rather, the question before this Court is whether the Department of Insurance has the statutory authority to review an insurance carrier's application of a rule promulgated by a rating organization for the calculation of premium rates, such as NCCI's Basic Manual Rule 2.H.2.

2. <u>The Idaho Department of Insurance has the statutory authority to review the application of a rule promulgated by a rating organization.</u>

State agencies in Idaho have no inherent authority. *See Idaho Power Co. v. Idaho Pub. Utils. Comm'n*, 102 Idaho 744, 750, 639 P.2d 442, 448 (1981); *see also* Richard Henry Seamon, *Idaho Administrative Law: A Primer for Students and Practitioners*, 51 Idaho L. Rev. 421, 439 (2015). As a general rule, administrative agencies "are tribunals of limited jurisdiction." *Washington Water Power Co. v. Kootenai Envtl. Alliance*, 99 Idaho 875, 879, 591 P.2d 122, 126 (1979). Thus, agencies have no authority outside of what the Legislature specifically grants to them. *Idaho Retired Firefighters Assoc. v. Pub. Emp. Ret. Bd.*, 165 Idaho 193, 196, 443 P.3d 207, 210 (2019) (citing *Idaho Power Co.*, 102 Idaho at 750, 639 P.2d at 448).

The Department of Insurance is an agency, created by statute, which has been granted the authority to enforce the Idaho Insurance Code and carry out the duties imposed upon it by the Insurance Code. I.C. § 41-210(1)–(2). Chapter 16 of the Insurance Code is dedicated to workers' compensation insurance. I.C. § 41-1601. In drafting Chapter 16, the Legislature found it desirable to provide for the "making of premium rates for [workers'] compensation insurance coverages in concert" and to provide for "review by the states of the rates so made . . . ." I.C. § 41-1602(1). To that end, the purpose of Chapter 16 is:

> (a) To authorize such rate-making in concert, and the operation of rating organizations relative thereto;
>
> (b) To establish the general bases and standards for the making of such rates; [and]
>
> (c) To provide for review by the state of such rate-making and the results thereof.

I.C. § 41-1602(2).

Section 41-1606 of the Insurance Code requires insurance companies or their rating organizations to submit rate filings to the Director, including "every manual of classifications, rules and rates, every rating plan and every modification of any of the foregoing which it proposes to use" in writing workers' compensation insurance policies within the state. I.C. § 41-1606(1). The Insurance Code also provides that "[a]ny person or organization aggrieved with respect to any filing which is in effect may make written application to the director for a hearing thereon . . . ." I.C. § 41-1623(1).

Specifically, a party aggrieved by the application of a rating organization's rating system may seek review, first by the rating organization, and then by the Director of the Department of Insurance:

> Every rating organization and every insurer which makes its own rates shall provide within this state reasonable means whereby any person *aggrieved by the application of its rating system* may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him . . . Any party affected by the action of such rating organization or such insurer on such request may, within thirty (30) days after written notice of such action, appeal to the director, who, after a hearing held upon notice to the appellant and to such rating organization or insurer in accordance with chapter 2, title 41, Idaho Code, may affirm or reverse such action.

I.C. § 41-1622(2) (emphasis added).

Travelers argues these statutes only grant the Department authority to determine "whether a 'filing' fails to meet the requirements of law." However, we conclude that a plain reading of Idaho Code section 41-1622(2) demonstrates otherwise.

"The objective of statutory interpretation is to give effect to legislative intent." *Farmers Nat'l Bank v. Green River Dairy, LLC*, 155 Idaho 853, 856, 318 P.3d 622, 625 (2014) (quoting *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007)). "Statutory interpretation begins with 'the literal words of the statute, and this language should be given its plain, obvious, and rational meaning.'" *Id.* (quoting *Seward v. Pac. Hide & Fur Depot*, 138 Idaho 509, 511, 65 P.3d 531, 533 (2003)). "If the statutory language is unambiguous, 'the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of

10

statutory construction.'" *Id.* (quoting *St. Luke's Reg'l Med. Ctr., Ltd. v. Board of Comm'rs*, 146 Idaho 753, 755, 203 P.3d 683, 685 (2009)).

The phrase "aggrieved by the application of its rating system" in Idaho Code section 41-1622(2) plainly provides for the type of review that occurred in this case. When an insurer uses a rating organization's rating system to determine how much an insured must pay under the terms of its policy, the insurer is "applying" the rating system. The statute expressly provides for review of "the manner in which such rating system has been applied in connection with the insurance afforded . . . ." I.C. § 41-1622(2). Based on the statute's plain language, we can only conclude that Idaho Code section 41-1622(2) provides for review of an insurer's application of a rating system to an insured's policy. To hold otherwise would be to read the words "the application of" out of the statute altogether.

Having come to the conclusion that Idaho Code section 41-1622(2) gives the Department the authority to review an insurer's use of a rating system in connection with a specific insured's workers' compensation policy, determining whether the Department acted within its authority in this case becomes fairly straightforward.

NCCI's Basic Manual Rule 2.H is part of a rating system promulgated by NCCI and used by insurance companies in Idaho to write and administer workers' compensation policies. As such, Basic Manual Rule 2.H is a "rate filing" as described in section 41-1606 and subject to review under sections 41-1622 and 41-1623 of the Insurance Code. Travelers "applied" NCCI's Basic Manual Rule 2.H to determine whether two mechanics, treated as uninsured subcontractors, could be included in the premium-rate calculation. That calculation had a direct impact on Ultimate's workers' compensation policy because it was used to determine the premium rates Ultimate would be charged. Since aggrieved insureds have a right to review "the application of" a rating system in connection with their insurance policy, Ultimate rightfully sought review of Travelers' "application of" Rule 2.H to its insurance policy. Therefore, the district court did not err in determining that the Department acted within its statutory authority under sections 41-1622 and 41-1623 of the Insurance Code when it reviewed "the application of" NCCI's Basic Manual Rule 2.H to Ultimate's insurance policy.

11

**B. Substantial, competent evidence supports the Department of Insurance's determination that the mechanics were not required to be covered under Ultimate's workers' compensation policy.**

Travelers argues that the Department of Insurance's determination that the mechanics working for Ultimate were not required to be covered under Ultimate's workers' compensation policy is not supported by substantial, competent evidence.

So long as an agency's determinations are supported by substantial, competent evidence in the record, "the agency's factual determinations are binding on the Court, even where there is conflicting evidence before the agency. . . ." *Barron v. Idaho Dept. of Water Resources*, 135 Idaho 414, 417, 18 P.3d 219, 222 (2001) (citation omitted). "Substantial evidence is less than a preponderance of evidence, but more than a mere scintilla." *Chisholm v. Idaho Dept. of Water Resources*, 142 Idaho 159, 164, 125 P.3d 515, 520 (2005) (citing *Evans v. Hara's, Inc.*, 123 Idaho 473, 478, 849 P.2d 934, 939 (1993)). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Id.* (quoting *Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 583, 38 P.3d 617, 621 (2001)).

The Department came to its determination that the mechanics were not required to be included in the workers' compensation policy based on Rule 2.H, which was excerpted from NCCI's Basic Manual and admitted as an exhibit to the hearing officer. NCCI's Basic Manual Rule 2.H provides:

> 1. In those states where workers['] compensation laws provide that a contractor is responsible for the payment of compensation benefits to employees of its uninsured subcontractors, the contractor must furnish satisfactory evidence that the subcontractor has workers compensation insurance in force covering the work performed for the contractor. The following documents may be used to provide satisfactory evidence:
>
>    - Certificate of insurance for the subcontractor's workers['] compensation policy
>    - Certificate of exemption
>    - Copy of the subcontractor's workers['] compensation policy
>
> 2. For each subcontractor not providing such evidence of workers['] compensation insurance, additional premium must be charged on the contractor's policy for the uninsured subcontractor's employees according to Subcontractor Table 1 and 2 below.

In reaching the conclusion that Ultimate was not required to pay any additional premiums for the mechanics under Rule 2.H, the hearing officer relied on two factual findings. First, the

hearing officer found that both of the mechanics obtained their own workers' compensation insurance policies in compliance with Rule 2.H. Second, the hearing officer found that the two mechanics did not have any employees.

Because of the way Rule 2.H operates, either factual finding, if supported by substantial, competent evidence, would be enough to uphold the Department of Insurance's decision. Rule 2.H.1 and Rule 2.H.2 operate in tandem. Rule 2.H.1 explains what types of proof an insured may provide to satisfy the requirement that its subcontractors be covered by workers' compensation insurance. Rule 2.H.2 provides the consequence of failing to provide such proof. Specifically, Rule 2.H.2 allows the insurer to charge additional premiums on the insured contractor's policy "for the uninsured subcontractor's *employees.*" Thus, if the mechanics (the subcontractors in this scenario) have their own workers' compensation insurance, Travelers cannot charge additional premiums on Ultimate's policy under Rule 2.H. Alternatively, if the mechanics are indeed uninsured, Travelers *can* charge additional premiums for the mechanics' *employees* under Rule 2.H.2. But if the mechanics do not have any employees, Travelers will have nothing to charge additional premiums for. Therefore, if either of the Department's factual findings are supported by substantial, competent evidence, Ultimate cannot be charged additional premiums under Rule 2.H.

The first factual finding, that the mechanics had obtained their own workers' compensation policies, is not supported by substantial, competent evidence. While Ultimate's general manager testified at the hearing before the Department that the mechanics had obtained their own workers' compensation insurance policies, he could not remember when. The mechanics each wrote letters to NCCI that were also submitted as exhibits to the hearing officer. Each mechanic stated in their letter that they had purchased individual workers' compensation policies through Hub International Transportation Insurance "due to the issues Travelers Insurance has created." Travelers argued below and on appeal that the Department should not have considered the letters because they were inadmissible hearsay evidence. However, the Department of Insurance is "a fact-finding, administrative agency and, as such, is not bound by the strict rules of evidence governing courts of law." *Eastern Idaho Reg'l Med. Ctr. v. Ada Cnty. Bd. of Cnty. Comm'rs*, 139 Idaho 882, 885, 88 P.3d 701, 704 (2004) (citations omitted). Therefore, the hearing officer was not prohibited from taking hearsay evidence into consideration. Nevertheless, the letters do not show that the mechanics had workers'

13

compensation insurance policies in place *during* the coverage period for which Ultimate was audited. If anything, they provide evidence that the mechanics went out and purchased their own workers' compensation policies after the fact. While the mechanics' new workers' compensation policies may be relevant to the calculus going forward, they have no impact on the 2015 audit. Accordingly, the hearing officer's reliance on the mechanics' letters as support for the factual finding that the mechanics had purchased their own workers' compensation policies is misplaced. It is also worth noting that Rule 2.H.1 lists three types of evidence that may be used by an insured to prove that their subcontractors have their own workers' compensation coverage: "[c]ertificate[s] of insurance for the subcontractors['] workers['] compensation polic[ies]," "[c]ertificates of exemption," or "[copies] of the subcontractors['] workers['] compensation polic[ies]." None of these types of evidence were offered by Ultimate. In sum, the Department of Insurance's factual finding that the mechanics had purchased their own workers' compensation insurance policies was not supported by substantial, competent evidence.

The hearing officer's second factual finding, that the mechanics did not have any employees is supported by substantial, competent evidence. The letters written by each mechanic explain that they are operating as sole member LLCs. At the hearing, the auditor for Travelers discussed adding the mechanics to the calculation of Ultimate's policy premiums. The mechanics were referred to by name multiple times throughout direct and cross-examination of the auditor. The auditor never once mentioned adding any individuals working for the mechanics to Ultimate's policy. No evidence was presented at the hearing, nor appears anywhere in the record that suggests these two mechanics, operating as single member LLCs, had any employees. Other than the general contention on appeal that the Department of Insurance's decision was not supported by substantial, competent evidence, Travelers has not argued, at any stage, that either mechanic had any employees. Accordingly, we hold that the hearing officer's factual finding that neither mechanic had any employees was supported by substantial, competent evidence.

In sum, there was not substantial, competent evidence to support the hearing officer's finding that the mechanics had their own workers' compensation policies in place for the coverage period that was audited. Therefore, Travelers was entitled to charge additional premiums on Ultimate's policy for all of the mechanics' employees. However, there was substantial, competent evidence to support the hearing officer's finding that neither of the mechanics had any employees. Thus, the hearing officer's ultimate conclusion that Ultimate was

14

not required to pay additional premiums under Rule 2.H was supported by substantial, competent evidence.

**C. The district court did not abuse its discretion by allowing an attorney to appear on behalf of Ultimate more than 21 days after Ultimate's original attorney withdrew.**

Travelers argues that the district court erred in allowing an attorney to appear on behalf of Ultimate after filing an untimely notice of appearance. Ultimate argues that allowing an attorney to appear on its behalf was within the district court's discretion.

Idaho Rule of Civil Procedure 11.3 governs withdrawal and substitution of attorneys. Under Rule 11.3(c), a party has 21 days from the time his attorney withdraws to find another attorney and file a notice of appearance of the new attorney with the court. I.R.C.P. 11.3(c). If a notice of appearance is not filed within the 21 days, "the court may dismiss with prejudice any claims of the party or may enter a default judgment against the party." I.R.C.P. 11.3(c)(3). But Rule 11.3(c) does not mandate the court to do either one. Rather, Rule 11.3(c) provides that a court *may* dismiss the claims with prejudice or *may* enter a default judgment, leaving the decision to the sound discretion of the district court.

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (emphasis in original) (citation omitted).

Here, the district court recognized its decision was discretionary, stating that it would "exercise its discretion" to allow counsel to appear and file a brief on behalf of Ultimate. As explained above, Rule 11.3(c) gave the district court the option to enter a default judgment against Ultimate, but did not require it to do so. The district court acted within the outer boundaries of its discretion and consistently with Rule 11.3(c) when it opted not to enter a default judgment. Finally, the district court reached its decision by the exercise of reason. Specifically, the district court reasoned that it had not yet held a hearing on the merits of the appeal, nor had it taken the matter under advisement. The district court explained that its goal was to "ascertain the proper application of the law," and allowing Ultimate's new attorney the opportunity to provide briefing and argument on the matter, even if untimely, would be in

15

furtherance of that goal. The district court did not abuse its discretion by allowing an attorney to appear and provide argument on behalf of Ultimate.

**D. The district court erred in awarding attorney's fees to Ultimate under Idaho Code section 12-121.**

The district court awarded attorney's fees to Ultimate under Idaho Code section 12-121 on the grounds that Travelers' appeal was brought without foundation because the only issue raised by Travelers was moot. Idaho Code section 12-121 provides:

> In any *civil action*, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation.

I.C. § 12-121 (emphasis added). "Civil actions" are cases commenced by the filing of a complaint. *See Goodman Oil Co. v. Scotty's Duro-Bilt Generator, Inc.*, 147 Idaho 56, 59, 205 P.3d 1192, 1195 (2009). Attorney's fees are not available under Idaho Code section 12-121 on petitions for judicial review because they are not commenced by the filing of a complaint. *Id.* This case came before the district court when Travelers sought judicial review of the Department of Insurance's final order. No complaint was ever filed in the district court. As such, the district court erred in awarding attorney's fees to Ultimate under Idaho Code section 12-121.

**E.  Neither party is entitled to attorney's fees on appeal.**

Ultimate requests an award of attorney's fees on appeal pursuant to Idaho Code sections 12-121 and 12-120(3). Travelers does not request attorney's fees on appeal. As discussed above, attorney's fees are not available under section 12-121 in proceedings that were initiated by a petition for judicial review of an agency's final order. Idaho Code section 12-120(3) applies to commercial transactions. Section 12-120(3) provides in relevant part:

> In any *civil action* to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee[.]

I.C. § 12-120(3) (emphasis added).

Like section 12-121, section 12-120(3) allows for attorney's fees in "civil action[s]." *See id.* Civil actions are commenced by the filing of a complaint. *See Goodman Oil Co. v. Scotty's Duro-Bilt Generator, Inc.*, 147 Idaho 56, 59, 205 P.3d 1192, 1195 (2009). Because Travelers initiated these proceedings by filing a petition for judicial review with the district court,

attorney's fees cannot be awarded under Idaho Code section 12-120(3). As such, we decline to award attorney's fees on appeal.

## V.    CONCLUSION

In light of the foregoing, we hold that: (1) the Department of Insurance did not exceed its statutory authority in determining that the mechanics could not be included in the premium-rate calculation, (2) the Department of Insurance's decision was supported by substantial, competent evidence, (3) the district court did not abuse its discretion in allowing an attorney to appear and argue on behalf of Ultimate, and (4) the district court erred in awarding attorney's fees to Ultimate under Idaho Code section 12-121. Accordingly, the district court's award of attorney's fees below is vacated. The remainder of the district court's decision is affirmed. Neither party is awarded attorney's fees on appeal. We award costs to Ultimate.

Justices BRODY, BEVAN, STEGNER, AND MOELLER **CONCUR.**