# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49371

GLEN MILLER and CYNTHIA ANDERSON, Trustees of the GLEN MILLER AND CYNTHIA ANDERSON REVOCABLE LIVING TRUST,

    Plaintiffs-Counterdefendants-Appellants-Cross Respondents,

v.

ROCKING RANCH NO. 3 PROPERTY OWNERS' ASSOCIATION, INC., an Idaho nonprofit corporation,

    Defendant-Counterclaimant-Respondent-Cross Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2023 Term

Opinion Filed: January 12, 2024

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Ned C. Williamson, District Judge.

The decision of the district court is <u>affirmed in part</u> and <u>vacated and remanded in part</u>.

Givens Pursley LLP, Boise, for Plaintiffs-Counterdefendants-Appellants-Cross Respondents, Glen Miller and Cynthia Anderson. Morgan D. Goodin argued.

Lawson Laski Clerk PLLC, Ketchum, for Defendant-Counterclaimant-Respondent-Cross Appellant, Rocking Ranch No. 3 Property Owners' Association, Inc. Edward A. Lawson argued.

---

STEGNER, Justice.

This appeal arises from a property dispute in Ketchum, Idaho. Glen Miller and Cynthia Anderson ("Miller and Anderson") filed a lawsuit against the Rocking Ranch No. 3 Property Owners' Association, Inc. ("the Association"), after the Association prevented Miller and Anderson from building a home on a lot they purchased within the subdivision. Miller and Anderson asserted, among other things, that the Association's decision to deny their application to construct a home and provisions of the Association's Covenants, Conditions and Restrictions ("CC&Rs") and Design Rules they relied on were and are unlawful. The Association asserted

1

several counterclaims against Miller and Anderson to recover unpaid HOA assessments, the bulk of which were for legal fees the Association incurred as a result of this litigation. The district court ultimately granted summary judgment to the Association on Miller and Anderson's claims and dismissed the Association's counterclaims. Relying on *Farm Credit Bank of Spokane v. Wissel*, 122 Idaho 565, 836 P.2d 511 (1992), the district court granted the Association's subsequent request for attorney fees based on its conclusion the CC&Rs required that result, even though the district court determined neither party prevailed. Both parties timely appealed. For the reasons set forth below, we affirm the district court's dismissal of the Association's counterclaims and vacate and remand the district court's award of attorney fees to the Association for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

While the facts of this case reflect acrimony between the parties, the facts are largely undisputed. Rocking Ranch No. 3 ("Rocking Ranch") is a small subdivision in Ketchum, Idaho, that is divided into four residential lots. Each of the four lots is governed by the CC&Rs. Rocking Ranch is managed by the Association's Board ("Board"), which carries out its duties and powers as set out in the CC&Rs. Under the CC&Rs, a Design Review Committee ("DRC") has "the sole authority to determine the proper use, appearance, design and aesthetic qualify [sic] of any proposed [i]mprovement." The CC&Rs also establish the ability of the Association to amend the CC&Rs "by an instrument in writing signed and acknowledged by the president and secretary of the Association certifying that such amendment has been approved by the vote or written consent of at least three-fourths (3/4) of the Owners[.]"

Miller and Anderson, as Trustees of the Glen Miller and Cynthia Anderson Revocable Living Trust, purchased Lot 3 in the Rocking Ranch subdivision, which was subject to the recorded CC&Rs. Miller and Anderson wanted to build a prefabricated, modular home with a "modern mountain" design. In accordance with the rules established by the DRC, Miller and Anderson prepared and submitted a preliminary application of their proposed home construction to the DRC for review in September 2017.

Even before Miller and Anderson submitted their preliminary application, members of the DRC and the Board exchanged communications among themselves indicating their aversion to the proposed design. Members of the DRC and the Board expressed comments such as "chances don't look good even at the preliminary review stage[,]" and, "I just do not understand how Cindi [Anderson] either did not read our CC & Rs or she disregarded them completely thinking she could

2

build her Method Modular plan regardless." After Miller and Anderson submitted their preliminary application, the Association's secretary emailed an architect stating, "[w]e are all hoping that Cindi [Anderson] and Glen [Miller] will not be able to move forward with any of it and we hope even more that they find another piece of property somewhere more suitable for the Method Home."

Despite the apparent opposition from the Board to the preliminary plans for the modular concept home, the CC&Rs contained no rules limiting the methods of construction for the homes in Rocking Ranch. Nevertheless, the DRC denied the preliminary application, concluding that the designs submitted by Miller and Anderson were unsuitable pursuant to the DRC requirements. Miller and Anderson revised their plans and resubmitted their application, which purportedly fully complied with the DRC requirements. However, the DRC again denied the application explaining "[i]t was not rejected solely because it failed to meet certain detailed design guidelines – such as those related to roof design, materials and construction. The problems with it were much more fundamental."

In January 2018, after the DRC had denied the preliminary application, the Board proposed an amendment to the CC&Rs that included both a section related to prohibiting prefabricated homes and a section related to restricting the use of the properties within Rocking Ranch to certain persons ("Proposed Second Amendment"). If approved, the prefabrication provision would have limited the DRC to "have no authority to approve buildings or grant variances for buildings that are to be constructed offsite in whole or in part in modules that are then transported to the site for final assembly." Additionally, if approved, the residential use provision of the Proposed Second Amendment would require that: "No residence shall be used for any purpose other than single-family residential purposes. Single-family residential use or purpose shall mean use or occupation of a residence by one single family unit comprised of persons related by blood, marriage or adoption[.]" Coincidentally, Miller and Anderson are unmarried.

Unable to construct their desired residence within the Rocking Ranch No. 3 Subdivision and concerned with the adoption of the Proposed Second Amendment, Miller and Anderson sued the Association in January 2018, seeking three remedies: (1) a declaratory judgment that the actions of the DRC as well as the provisions of the CC&Rs that it relied upon in denying Miller and Anderson's application were unlawful; (2) a declaratory judgment that the Proposed Second Amendment to the CC&Rs was unlawful; and (3) injunctive relief prohibiting the Association from adopting the Proposed Second Amendment.

3

The district court eventually dismissed Miller and Anderson's Counts 2 and 3, concluding that they were not ripe for adjudication. Soon after, the district court also granted summary judgment to the Association on Count 1. The district court then allowed Miller and Anderson to amend their complaint to add two more claims: Count 4 for breach of the implied covenant of good faith and fair dealing; and Count 5 for breach of contract.

In its answer to the amended complaint, the Association included three counterclaims against Miller and Anderson to recover unpaid HOA assessments. The Association is authorized by the CC&Rs to levy assessments on its members to cover its expenses. However, during this litigation, the Association included in its assessments the attorney fees and costs it had incurred in defending against Miller and Anderson's lawsuit. The first assessment occurred in June 2018, when the Association required each of its four lot owners to pay $5,884.56. This included $754.28 for routine HOA expenses such as snow removal, insurance, and maintenance, as well as an additional $5,130.28 in attorney fees and costs from defending this lawsuit. While Miller and Anderson ultimately paid the nonlegal fee portion of this assessment, they refused to pay the remaining amount, arguing they were not obligated to subsidize the defense of a lawsuit they had initiated. In response, the Association asserted three counterclaims against Miller and Anderson. These included claims of an open account, an account stated, and for breach of contract to recover the unpaid balance of the assessment.

Thereafter, the Association continued to include its attorney fees and costs in its HOA assessments, and Miller and Anderson continued to refuse to pay the portion of these assessments that related to the Association's legal expenses from this lawsuit. In 2019, Miller and Anderson sold their property in Rocking Ranch, at which point, the Association ceased levying assessments on Miller and Anderson. In total, Miller and Anderson refused to pay $40,778.08 in HOA assessments, all of which related to the Association's attorney fees and costs from this litigation.

The district court ultimately granted summary judgment to the Association on Counts 4 and 5 of Miller and Anderson's amended complaint. The parties then stipulated to the submission of the Association's counterclaims to the district court for resolution in lieu of a trial. The district court thereafter dismissed the Association's counterclaims.

Following the dismissal of these counterclaims, and relevant to this appeal, the Association filed two motions. First, the Association filed a motion to reconsider the district court's dismissal of the Association's counterclaims. The district court denied this motion. Second, the Association

filed a motion to recover its attorney fees and costs, which the district court granted in part and denied in part. The district court first concluded that neither party was a prevailing party because each had prevailed in part. However, citing *Farm Credit Bank*, the district court reasoned that the Association could still recover some of its attorney fees under the terms of the CC&Rs, even though it was not a prevailing party. Consequently, the district court awarded the Association a portion of its requested attorney fees for the prosecution of its counterclaims. Both parties timely appealed.

## II. STANDARDS OF REVIEW

"Review of a trial court's conclusions following a bench trial is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 795, 452 P.3d 809, 817 (2019) (internal citation omitted). "[T]his Court exercises free review over matters of law and is not bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented." *Id.* (internal quotation marks and citation omitted).

"This Court freely reviews questions of law and contract interpretation." *Fletcher v. Lone Mountain Rd. Ass'n*, 165 Idaho 780, 784, 452 P.3d 802, 806 (2019) (internal citation omitted). "However, the decision to award attorney fees and costs lies within the discretion of the trial court; thus, we review such determinations for an abuse of discretion." *Id.* (internal citation omitted). "A trial court does not abuse its discretion when it (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Id.* (internal quotation marks and citation omitted).

## III. ANALYSIS

On appeal, the parties challenge two separate decisions by the district court. First, the Association challenges the dismissal of its counterclaim alleging breach of contract. Second, both parties appeal the district court's partial award of attorney fees and costs to the Association. Each decision will be discussed in turn.

### A. The district court did not err in dismissing the Association's counterclaim for breach of contract.

As noted above, the Association initially brought three counterclaims against Miller and Anderson (open account, account stated, and breach of contract). The district court ultimately dismissed all three counterclaims, concluding that the Association had failed to prove any of them.

5

The Association only appeals the district court's decision pertaining to the Association's breach of contract counterclaim. Relevant here, the district court held that the Association failed to establish its breach of contract counterclaim because it had not established two elements of the prima facie case: breach of the contract and damages resulting from the breach. *See McCarthy Corp. v. Stark Inv. Grp., LLC*, 168 Idaho 893, 905, 489 P.3d 804, 816 (2021) ("To sustain a cause of action for breach of contract, one must show: (1) the existence of the contract, (2) the breach of the contract, (3) the breach caused damages, and[] (4) the amount of those damages." (internal quotation marks and citation omitted)).

In concluding that Miller and Anderson had not breached the CC&Rs, the district court reasoned that the Association was only authorized under the CC&Rs to assess fees that were "necessary or proper." The district court determined that the attorney fees incurred by the Association in defending the lawsuit brought by Miller and Anderson were not necessary or proper because they were the consequence of inappropriate conduct by the DRC and the Board. As a result, the district court concluded that it was also not necessary or proper for the Association to assess its attorney fees against Miller and Anderson because Miller and Anderson were legally excused from paying them.

On appeal, the Association advances several arguments contending the district court erred in concluding that Miller and Anderson had not breached the CC&Rs when they refused to pay the Association's assessments for attorney fees it incurred in this lawsuit. First, the Association argues that the district court lacked jurisdiction under Idaho's *ultra vires* statute to evaluate whether the Association's decision to assess its legal fees was necessary or proper. Second, the Association contends that the business judgment rule precluded the district court from reviewing the Association's decision to assess legal fees against its members. Third, the Association argues that the assessment of legal fees was, in fact, necessary or proper.

In response, Miller and Anderson argue that neither Idaho's *ultra vires* statute nor the business judgment rule are applicable to the Association's breach of contract counterclaim. Miller and Anderson also maintain that the district court correctly concluded that the legal fees assessed by the Association against Miller and Anderson were neither necessary nor proper.

We conclude that the district court did not err. As the district court correctly reasoned, Idaho's *ultra vires* statute is inapplicable because the argument was waived by the Association. Additionally, the business judgment rule did not preclude the district court from reaching the

6

decision it did. Finally, the district court appropriately determined that the assessment of fees by the Association was not "necessary or proper" as required by the CC&Rs. We agree that Miller and Anderson did not breach the CC&Rs by refusing to pay the Association's assessment of attorney fees sought because of the dispute regarding the rejection of Miller and Anderson's application. In addition, there was no legal theory preventing the district court from analyzing the question presented to it. As a result, we affirm the district court's dismissal of the Association's breach of contract counterclaim.

### 1. *The Association waived its argument regarding Idaho's* Ultra Vires *Statute.*

To begin, we must first address the Association's threshold argument that the district court, as well as this Court, "lack jurisdiction" to review the Board's authority to assess attorney fees against its members. The Association contends that the district court's determination that the Board's assessment was not "necessary or proper" was akin to concluding that the Board acted *ultra vires*, i.e., beyond its authority. The Association argues that, pursuant to Idaho's *ultra vires* statute, Idaho Code section 30-30-304, such a determination could only be made if Miller and Anderson had "fil[ed] an injunctive action against the [Association], which must be sought in a derivative proceeding." The Association maintains that, because Miller and Anderson did not fulfill the requirements set forth in Idaho Rule of Civil Procedure 78 by initiating a derivative action, the "[d]istrict [c]ourt lacked jurisdiction to entertain their challenge to the" assessment of attorney fees and costs.

Miller and Anderson respond by arguing that Idaho Code section 30-30-304 does not implicate subject matter jurisdiction. As a result, they argue that the Association should have raised that argument before the district court, and since it did not, it waived the argument on appeal. Further, Miller and Anderson contend that the *ultra vires* statute does not apply in this matter because this case involves basic contract interpretation.

We agree with Miller and Anderson that the Association's *ultra vires* argument did not implicate subject matter jurisdiction. Nothing in the plain language of section 30-30-304 suggests that it acts as a jurisdictional hurdle. Instead, this Court has explained that the *ultra vires* statute "provide[s] for an affirmative defense[.]" *Taylor v. Taylor*, 163 Idaho 910, 918, 422 P.3d 1116, 1124 (2018). Compliance with Idaho Code section 30-30-304, then, does not affect whether a district court has authority over the underlying claim, but merely whether a party may properly assert the defense of an *ultra vires* act. *Walker v. Meyer*, 170 Idaho 408, 411–12, 511 P.3d 828,

7

831–32 (2021) (concluding that NORA was not a "jurisdictional bar" because it was an "affirmative defense").

While both parties acknowledge that the Association made a similar argument in 2018, this was only in response to Miller and Anderson's application for a temporary restraining order and had nothing to do with the Association's breach of contract counterclaim, which the Association did not assert until 2019. The Association never raised the issue in support of its counterclaim for breach of contract, nor has it argued for its application in over five years of this litigation. "It is axiomatic that this Court will not consider issues raised for the first time on appeal." *Siercke v. Siercke*, 167 Idaho 709, 715, 476 P.3d 376, 382 (2020) (internal citation omitted). "A party must raise both the issue and their position on that issue before the trial court for this Court to review it." *Id.* (internal citation omitted). Here, the district court never had the opportunity to address the issue now raised on appeal by the Association. The Association's *ultra vires* argument does not implicate subject matter jurisdiction and has not been preserved. Consequently, it may not be raised for the first time on appeal.

2. *The business judgment rule does not preclude the district court from rendering the decision it did.*

Next, the Association argues that the business judgment rule precludes the district court from reviewing whether the Board's assessment of attorney fees was necessary or proper. According to the Association, "[t]he business judgment rule is one rule the application of which has two consequences even in Idaho. The consequences of the rule are immunizing the [corporate] decision maker from liability *and the decision made from being second-guessed by the court*." (Italics added.) The Association refers to this second consequence as the "abstention requirement." In sum, the Association argues that the district court's review of what fees were necessary or proper under the CC&Rs violates the abstention requirement. We disagree.

As an initial point, we do not agree with the Association that the business judgment rule applies to this case at all. With respect to the first consequence—immunizing the corporate decision maker from liability—our case law has never recognized that the business judgment rule applies to a case in which a corporation sues its shareholders for breach of contract. We have only applied the business judgment rule in the reverse situation—to claims brought by shareholders against corporate decision makers seeking to impose liability or to otherwise compel corporate action. *See Steelman v. Mallory*, 110 Idaho 510, 512–13, 716 P.2d 1282, 1284–85 (1986); *McCann v. McCann*, 152 Idaho 809, 275 P.3d 824 (2012); *see also GME, Inc. v. Carter*, 120 Idaho 517,

520, 817 P.2d 183, 186 (1991). In such situations, "the business judgment rule immunizes the good faith acts of directors when the directors are acting within the powers of the corporation and within the exercise of their honest business judgment." *Steelman*, 110 Idaho at 513, 716 P.2d at 1285 (internal quotation marks and citations omitted).

In other words, the business judgment rule "'immunizes management *from liability* in [a] corporate transaction undertaken within both power of corporation and authority of management where there is reasonable basis to indicate that transaction was made in good faith.'" *Leppaluoto v. Warm Springs Hollow Homeowners Ass'n, Inc.*, 114 Idaho 3, 6, 752 P.2d 605, 608 (1988) (italics added) (quoting BLACK'S LAW DICTIONARY (rev. 5th ed. 1979)). In this way, the business judgment rule operates as a shield to protect corporate decision makers from liability, but not as a sword by which a corporation may impose liability on others. *Id.* (applying business judgment rule to a claim brought by an HOA member *against* his HOA to reduce an assessment); *see also* I.C. §§ 30-30-618, 30-30-623 (codifying the standard of conduct required for directors and officers and shielding the same from liability when that standard has been met).

For this reason, the business judgment rule is inapplicable here. Rather than a shareholder suing corporate decision makers, the corporation in this case (the Association) is suing (via a counterclaim) two of its members for breach of contract. Additionally, Miller and Anderson are not challenging the Board's assessment because they want to hold the members of the Board liable for bad faith, as would be the case in a standard application of the business judgment rule. Instead, they are trying to avoid liability themselves. These facts do not implicate the business judgment rule in the way advanced by the Association.

Accordingly, we reject the Association's argument that the business judgment rule precluded the district court from determining whether Miller and Anderson had breached their contractual duty when they refused to pay the assessments levied by the Association. Because we have concluded that the business judgment rule does not apply, we do not need to address the abstention requirement.

*3. The assessment of attorney fees was not "necessary or proper" under the CC&Rs.*

Having concluded that the district court was not prevented from determining whether the attorney fees levied by the Association were necessary or proper under the CC&Rs, we now turn to the merits of its decision. "[T]his Court generally applies contract principles when interpreting CC&Rs." *Fletcher*, 165 Idaho at 784, 452 P.3d at 806–07 (internal citations omitted). "A breach

of contract occurs when there is a failure to perform a contractual duty." *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 361, 93 P.3d 685, 692 (2004) (internal citation omitted). The parties here agree that the CC&Rs are unambiguous. As such, we will interpret the CC&Rs by their plain meaning. *Fletcher*, 165 Idaho at 785, 452 P.3d at 807 ("If a covenant is unambiguous, this Court applies its plain meaning as a matter of law.").

Section 6.05(A) of the CC&Rs outlines the Association's powers regarding assessments as follows:

> [The Association] shall have the power to do any and all *lawful* things which may be authorized, required or permitted to be done by the Association under this Declaration, the Articles and the Bylaws, and to do and perform any and all acts which may be *necessary or proper* for, or incidental to the proper management and operation of the Association Easements and the performance of the other responsibilities herein assigned, including without limitation:
>
> > (1) <u>Assessments</u>. The power to levy Assessments on the Owners of Lots and to force payment of such Assessments, *all in accordance with the provisions of this Declaration*.
> >
> > . . . .
> >
> > (7) <u>Legal and Accounting Services</u>. To retain and pay for legal and accounting services *necessary or proper* for the operation of the Association, enforcement of the Restrictions and the Association rules, or performance of any other duties or rights of the Association.

(Italics added.) (Underlining in original.) Additionally, section 7.01 of the CC&Rs obligates each member to pay all assessments levied by the Association. Taken together, these provisions require members to pay assessments when properly levied by the Association. However, this obligation only exists if the assessment itself is valid. Section 6.05(A) of the CC&Rs makes clear that the Association is only authorized to assess and recoup attorney fees if they are lawful as well as necessary or proper for the operation of the Association. Something is "necessary and proper" if it is "appropriate and well adapted to fulfilling an objective." *Necessary and Proper*, BLACK'S LAW DICTIONARY (7th ed. 1999).

The district court made several factual findings following the case being submitted to it in its capacity as the finder of facts indicating that the attorney fees incurred by the Association in defending Miller and Anderson's claims were not necessary or proper. The district court first found that the section of the Proposed Second Amendment which prohibited prefabricated homes specifically targeted Miller and Anderson. The initial version of the Proposed Second Amendment also required residents of Rocking Ranch to be married or related by blood, which (perhaps

inadvertently) discriminated against Miller and Anderson because they are unmarried. In addition, the district court found that the members of the DRC and the Board prejudged the preliminary application and were inappropriately biased against Miller and Anderson. Based on the record before us, we cannot conclude that these findings are clearly erroneous. *See, e.g.*, *PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 767, 291 P.3d 442, 450 (2012).

Taking the district court's factual findings into account, the actions taken by the Association that spawned this litigation were not necessary or proper. Indeed, amending the CC&Rs had nothing to do with the ongoing operation or management of the Association; rather, it was an attempt to prevent two of the Association's members, who owned the only undeveloped lot, from constructing a residence of their choice, even though the preliminary application did not violate the Association's design rules. Moreover, the comments by members of the DRC and the Board reflect that the way the Association reviewed the preliminary application was improper. Consequently, the attorney fees the Association incurred in defending Miller and Anderson's lawsuit, as well as the later assessment of those fees, were not necessary or proper. Thus, Miller and Anderson did not breach their duty under the CC&Rs by refusing to pay the assessment unrelated to the ongoing operation of the Association.

Because we conclude that the Association's breach of contract claim fails on the element of breach, we need not address whether the district court erred in its assessment of the Association's damages. In sum, we affirm the district court's decision dismissing the Association's breach of contract counterclaim.

**B. It is unclear from the record whether the district court erred in awarding partial attorney fees and costs to the Association. As a result, the partial award of attorney fees is vacated, and the case is remanded to the district court for further proceedings.**

Both parties appeal the district court's decision partially granting the Association's motion for attorney fees and costs pursuant to the CC&Rs. The Association requested attorney fees and costs under Idaho Rule of Civil Procedure 54, Idaho Code sections 12-120 and 12-121, and the terms of the CC&Rs. The district court denied the Association's request for costs under Idaho Rule of Civil Procedure 54(d) as well as attorney fees and costs under sections 12-120 and 12-121 after concluding that neither party was the prevailing party because each had prevailed in part. However, the district court determined the Association was nevertheless entitled to a partial award of attorney

11

fees under the terms of the CC&Rs. The district court reasoned that, although "counterintuitive,"[1] *Farm Credit Bank v. Wissel,* 122 Idaho 565, 836 P.2d 511 (1992), instructs that an award of attorney fees to a non-prevailing party is permissible if it is awarded pursuant to a valid contract.

The district court concluded that section 12.05(F) of the CC&Rs required a partial award of attorney fees to the Association. Section 12.05(F) states in relevant part:

> Attorney's Fees. In the event any party entitled to enforce the provisions of this Declaration retains an attorney to enforce such provisions, such party shall be entitled to the payment by the defaulting party of reasonable attorney's fees and costs incurred in the prosecution of such enforcement, whether or not litigation is commenced.

(Underlining in original.) The district court reasoned that section "12.05(F) simply requires 1) an enforcement action, 2) the retention of an attorney and 3) a default by a party."

The district court found that the fees incurred by the Association while defending against claims brought by Miller and Anderson did not satisfy the elements of section 12.05(F) because they were not related to the enforcement of the CC&Rs. By contrast, the district court determined that the attorney fees incurred while pursuing the Association's counterclaims against Miller and Anderson did satisfy section 12.05(F) because they were brought to enforce payment of its assessed fees as provided by the CC&Rs. The district court determined that the Association incurred $22,630.25 of attorney fees and costs in its prosecution of the counterclaims. The district court determined that this amount was reasonable and awarded $22,630.25 in attorney fees and costs to the Association relying on this Court's decision in *Farm Credit Bank*.

On appeal, both parties disagree with the district court's partial award of attorney fees to the Association. Miller and Anderson contend that this Court's decision in *Farm Credit Bank* is manifestly wrong and, as a result, the district court's award should be reversed. Conversely, the Association argues that section 12.05(F) of the CC&Rs entitles it to a *full* (rather than partial) award of attorney fees and costs.

Because the district court's award of attorney fees was predicated on *Farm Credit Bank*, we first address whether the case should be overturned. The Association contends that Miller and Anderson waived their argument to overturn *Farm Credit Bank* because they never raised the issue

---

[1] The district court also noted in a footnote that it "share[d] the reservations" expressed by Chief Justice Burdick that *Farm Credit Bank* is "'manifestly wrong' and should be reversed based on 'considerations of policy, equity and the Idaho Rules of Civil Procedure.'" *See Wash. Fed. v. Hulsey*, 162 Idaho 742, 753, 405 P.3d 1, 12 (2017) (Burdick, C.J., concurring in part and dissenting in part).

with the district court. Although Miller and Anderson never asked the district court to overrule *Farm Credit Bank*, such a request to the district court would have been futile given that the district court lacked authority to overrule controlling precedent from this Court. After all, we "simply expect lower courts . . . to follow decisions of this Court[.]" *State v. Clinton*, 155 Idaho 271, 272 n.1, 311 P.3d 283, 284 n.1 (2013).

As this Court has recognized, "[t]here is a difference between issues not formally raised below and issues that never surfaced below[,] until they appear in a decision." *State v. Plata*, 171 Idaho 833, 841, 526 P.3d 1003, 1011 (2023) (second alteration in original) (internal quotation marks and citation omitted). In *Plata*, this Court concluded that an issue could "not effectively surface below" because controlling precedent bound the lower court; as a result, the issue was allowed to be raised for the first time on appeal. *Id.* Likewise, the issue of whether *Farm Credit Bank* should be overturned could not have been brought below because the district court was bound to follow *Farm Credit Bank* as controlling precedent. Accordingly, we conclude Miller and Anderson may properly raise the issue for the first time on appeal.

Having determined that the issue is properly before us, we now turn to the merits of whether *Farm Credit Bank* should be overruled. "In Idaho, the rule of stare decisis dictates that we follow [controlling precedent] unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Farm Bureau Mut. Ins. Co. of Idaho v. Cook*, 163 Idaho 455, 459–60, 414 P.3d 1194, 1198–99 (2018) (internal quotation marks and citation omitted).

In *Farm Credit Bank*, this Court addressed whether a putative[2] non-prevailing party could recover attorney fees and costs pursuant to a contract. 122 Idaho at 568–69, 836 P.2d at 514–15. There, the Wissels, who had leased farmland owned by Farm Credit Bank of Spokane, refused to relinquish possession of the property at the expiration of their lease. *Id.* at 566, 836 P.2d at 512. The bank (and grantees of the property, the Ketterlings) sued the Wissels seeking relief on several grounds, including possession of land, injunctive relief, damages, and costs and attorney fees. *Id.* The trial court eventually granted summary judgment to the bank on its claim for possession of the

---

[2] We use the word "putative" because in certain respects the plaintiffs in that case, Farm Credit Bank of Spokane and the Ketterlings, never referred to themselves in their appeal as "non-prevailing parties." To the contrary, it appears they referred to themselves as "prevailing parties." *Farm Credit Bank,* 122 Idaho at 570, 836 P. 2d at 516 (Johnson, J., concurring in part and dissenting in part) ("F[arm] C[redit] B[ank] and the Ketterlings argue only that they were entitled to costs and attorney fees because they were prevailing parties.").

property, and the parties thereafter stipulated to the dismissal of the remaining claims and counterclaims. *Id.* Both parties then moved for an award of attorney fees and costs. *Id.* The trial court denied the parties' motions, concluding that neither party was the prevailing party since each party "prevailed in part and did not prevail in part." *Id.* at 568, 836 P.2d at 514. Notably, the district court never determined whether the bank or the Ketterlings were entitled to attorney fees under the terms of the lease because the district court believed the issue had been rendered moot because it had determined they were not a prevailing parties. *Id.*

On appeal, this Court vacated and remanded the district court's order denying attorney fees. *Id.* at 569, 836 P.2d at 515. Although we held that the district court did not abuse its discretion in concluding there had been no prevailing party, we determined that the district court should have considered whether the bank was entitled to its attorney fees and costs under the terms of the lease. *Id.* at 568, 836 P.2d at 514. The lease provided, "[i]n the event that the Lessor does find it necessary to bring suit or action under the terms of this lease, then the Lessee hereby agrees to pay the Lessor's reasonable attorney fees and costs of suit incurred in said suit or action." *Id.* We reasoned that "where there is a valid contract between the parties which contains a provision for an award of attorney fees and costs, the terms of that contractual provision establish a right to an award of attorney fees and costs." *Id.* at 568–69, 836 P.2d at 514–15. In a lengthy footnote, this Court further explained:

> While [Idaho Rule of Civil Procedure] 54(d)(1) grants costs to a litigant who is a "prevailing party," this Court has held that we adhere to the so-called "American rule," which holds that, except for sanctions and the private attorney general doctrines, attorney fees are created only by statute or contract, and that [Idaho] Rule [of Civil Procedure] 54(e) neither creates a right to attorney fees, nor diminishes any right created by statute or contract. I.R.C.P. 54(e)(1)–(5); *Hellar v. Cenarrusa*, 106 Idaho 571, 682 P.2d 524 (1984); *Idaho Power Co. v. Idaho Pub. Util. Comm'n*, 102 Idaho 744, 750, 639 P.2d 442, 448 (1981) ("[A]ttorney fees cannot be recovered in an action unless authorized by statute or by express agreement of the parties. *Kidwell v. Fenley*, 96 Idaho 534, 531 P.2d 1179 (1975)."). [Idaho Rule of Civil Procedure] 54(e)(5) provides that when attorney fees are allowable by statute or contract, the claim for attorney fees shall be "processed in the same manner as costs and included in the memorandum of costs;     " Thus, if a statute or contract provision limits the award of attorney fees to a "prevailing party," the [Idaho Rule of Civil Procedure] 54(d)(1) definition of "prevailing party" would be applicable. However, if the statute or contract sets forth a different standard, the determination of the award of attorney fees would be based upon the statutory or contractual standard, not the prevailing party standard of [Idaho Rule of Civil Procedure]

54(d)(1). If the statute or contract contains no standard, then the "prevailing party" standard of [Idaho Rule of Civil Procedure] 54(d)(1) would apply.

*Id.* at 569 n.4, 836 P.2d at 515 n.4. Because the trial court had not considered whether the attorney fees provision in the lease entitled the bank or the Ketterlings to recover their attorney fees, we remanded the case for the district court to make that determination. *Id.* at 569, 836 P.2d at 515.

Our decisions since *Farm Credit Bank* have explained that the case stands for the general proposition that "unless the contractual attorney fees provision specifically requires such, no 'prevailing party' requirement will be imposed on a contractual right to recover fees." *Post v. Murphy*, 125 Idaho 473, 477, 873 P.2d 118, 122 (1994); *see also Wash. Fed.*, 162 Idaho at 749, 405 P.3d at 8 ("[T]he terms of a valid contract between the parties provide[] for the award of attorney's fees and costs even though the trial court determine[s] that the requesting party ha[s] not prevailed."). We conclude that the cases following *Farm Credit Bank* have gone too far to the extent they suggest that a party who did not prevail on a contract claim is entitled to recover all their attorney fees pursuant to that contract.

The Court in *Farm Credit Bank* never claimed to be establishing a new rule regarding the award of attorney fees; instead, it attempted to apply "the so-called 'American rule,' " which it claimed meant that "attorney fees are created only by statute or contract, and that Rule 54(e) neither creates a right to attorney fees, nor diminishes any right created by statute or contract." *Farm Credit Bank*, 122 Idaho at 569 n.4, 836 P.2d at 515 n.4 (first citing I.R.C.P. 54(e)(1)–(5); then citing *Hellar*, 106 Idaho 571, 682 P.2d 524; and then citing *Idaho Power Co.*, 102 Idaho at 750, 639 P.2d at 448). However, this is an incomplete articulation of the American Rule regarding an award of attorney fees.

Under the American Rule, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise. The American Rule has roots in our common law reaching back to at least the 18th century." *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 370–71 (2019) (internal quotation marks and citations omitted); *see also Jenkins v. Com. Nat'l Bank of Saint Anthony*, 19 Idaho 290, 297, 113 P. 463, 465 (1911) ("It is the general rule that attorney's fees cannot be recovered in an action unless authorized by statute or by express agreement of the parties.").

This Court implicitly acknowledged that a party needs to prevail in order to be entitled to attorney fees in *Kidwell & Heiser v. Fenley*, 96 Idaho 534, 534, 531 P.2d 1179, 1179 (1975) (per curiam). There, we stated that "this Court has adhered to the rule that a *successful* litigant is not entitled to recover attorney fees for the cost of bringing an action unless such recovery is provided

by statute or contract between the parties." *Id.* (italics added); *see also In re Interest of Dunmire*, 100 Idaho 697, 699, 604 P.2d 711, 713 (1979) ("In the United States, the *prevailing* litigant is ordinarily not entitled to attorney fees in the absence of a statutory provision or enforceable contract." (italics added)).

Admittedly, unlike *Kidwell & Heiser*, much of our case law that has articulated the American Rule has omitted the requisite prevailing party language. *E.g.*, *Hellar*, 106 Idaho at 578, 682 P.2d at 531 ("We continue to adhere to the so-called 'American rule' to the effect that attorney fees are to be awarded only where they are authorized by statute or contract."). However, this omission was likely inadvertent. After all, prior to *Farm Credit Bank*, none of our case law reciting the American Rule addressed the award of attorney fees to a non-prevailing party. In fact, every case cited by the majority opinion in *Farm Credit Bank* dealt with an award of attorney fees to a prevailing party. *See generally*, *Chittenden & Eastman Co. v. Leasure*, 116 Idaho 981, 783 P.2d 320 (Ct. App. 1989); *Bank of Idaho v. Colley*, 103 Idaho 320, 647 P.2d 776 (Ct. App. 1982); *Hellar*, 106 Idaho at 578, 682 P.2d at 531; *Idaho Power Co.*, 102 Idaho at 751, 639 P.2d at 449. It is fair, then, to conclude that this Court, prior to *Farm Credit Bank*, rarely, if ever, acknowledged the prevailing party requirement inherent in the American Rule because it was never a consideration that a non-prevailing party could be awarded attorney fees. Thus, *Kidwell & Heiser* provides the most complete expression of the American Rule: "[A] *successful* litigant is not entitled to recover attorney fees for the cost of bringing an action unless such recovery is provided by statute or contract between the parties."[3] 96 Idaho at 534, 531 P.2d at 1179 (italics added).

The majority opinion in *Farm Credit Bank*, therefore, did not deviate from the American Rule; rather, it created an exception to Idaho Rule of Civil Procedure 54(e). Idaho Rule of Civil Procedure 54(e)(8) states "[a]ny claim for attorney fees . . . must be made pursuant to Rule 54(e) unless an applicable statute or contract provides otherwise." On its face, this language supports the statement made by the majority in *Farm Credit Bank* that "if the statute or contract sets forth a different standard" for awarding attorney fees, "the determination of the award of attorney fees

---

[3] It should be noted that the bank in *Farm Credit Bank* impliedly endorsed this version of the American Rule. On appeal, the bank never suggested it was "entitled to attorney fees and costs under the terms of the lease if [it was] not the prevailing part[y]." 122 Idaho at 569, 836 P.2d at 515 (Johnson, J., concurring in part and dissenting in part). Rather, it claimed it was entitled to an award of attorney fees based on its "*status as a prevailing party*." *Id.* at 570, 836 P.2d at 516 (italics in original). It argued that "[w]hen an award of attorney fees is sought based on the terms of a contract, it is unnecessary for *the prevailing party* to meet the restrictive criteria for an award of attorney fees contained in [Idaho Rule of Civil Procedure] 54(e)(1)." *Id.* at 569–70, 836 P.2d 515–16 (italics added).

would be based upon the statutory or contractual standard, not the prevailing party standard of [Idaho Rule of Civil Procedure] 54(d)(1)." 122 Idaho at 569 n.4, 836 P.2d at 515 n.4. In fact, this Court has previously explained that Idaho Rule of Civil Procedure 54(e)(8) "provides that the attorney fee provisions of Rule 54(e) apply only to the extent they are not *inconsistent* with the statute or contract that entitles the claimant to the fee award." *Bailey v. Bailey*, 153 Idaho 526, 531, 284 P.3d 970, 975 (2012) (citing I.R.C.P. 54(e)(8)) (italics added); *see also Zenner v. Holcomb*, 147 Idaho 444, 451, 210 P.3d 552, 559 (2009) (citing I.R.C.P. 54(e)(8) for the proposition that Idaho Rule of Civil Procedure 54(e) only applies to an attorney fee provision in a contract if Rule 54 is not inconsistent with the terms of the provision).

Even though *Farm Credit Bank* acknowledged that "[Idaho Rule of Civil Procedure] 54(d)(1) grants costs to a litigant who is a 'prevailing party,' " it nevertheless concluded that the American Rule permits an award of *attorney fees* based on a valid contract. 122 Idaho at 569 n.4, 836 P.2d at 515 n.4 (italics added). Awarding attorney fees to a non-prevailing party oftentimes leads to unfair and, as the district court noted, "counterintuitive" outcomes. For example, in *Post v. Murphy*, 125 Idaho 473, 873 P.2d. 118 (1994), this Court affirmed a district court's decision to award attorney fees and costs to a non-prevailing HOA because the terms of the HOA covenants provided for such an award, even though the district court had determined the plaintiffs were the prevailing parties. *Id.* at 476–77, 873 P.2d at 121–22. *Post* illustrates the untoward effect that *Farm Credit Bank* has had on our attorney fee jurisprudence. The notion that a non-prevailing party may force a prevailing party to pay its legal fees is not only inapposite to the American Rule, but it is also fundamentally unfair to the prevailing party.

This Court has previously declined to overrule *Farm Credit Bank* and *Post*; however, it did so on the grounds that the party did not adequately argue those cases be overruled on appeal. *See Wash. Fed. v. Hulsey*, 162 Idaho 742, 749, 405 P.3d 1, 8 (2017) ("Hulsey did not address Washington Federal's argument in its briefing on appeal and certainly did not advocate for its reversal of these long-standing precedents.").

We are not faced with the same restraints in today's case. Both parties have squarely addressed the issue of our apparent embrace of awarding attorney fees when a party has not prevailed. As a result, we conclude that going forward, to be awarded attorney fees pursuant to a contractual provision, the party seeking fees must be both entitled to attorney fees under the contract and have prevailed on the discrete claim under the contract. In this way, we are narrowing

our earlier decisions that suggest a non-prevailing party may be entitled to all its attorney fees. It will only be eligible for an award of attorney fees arising from claims on which it prevailed.

We emphasize that awarding attorney fees to a non-prevailing party provides perverse incentives for litigants and attorneys. As noted by the dissent in *Washington Federal*, "contract provisions making a prevailing party liable for the non-prevailing party's attorney fees epitomize[] inequitable bargaining while chilling both contract negotiation and litigation." 162 Idaho at 752, 405 P.3d at 11 (Burdick, C.J., concurring in part and dissenting in part); *see also Jadwin v. Kasal*, 318 N.W.2d 844, 848 (Minn. 1982) ("Requiring the mortgagor to underwrite all of the bank's legal actions taken with respect to the mortgagor's property would encourage ill-considered litigation and farfetched claims by the bank and discourage the mortgagor from challenging the liens claimed by subcontractors and materialmen."). Indeed, a party that is contractually entitled to attorney fees and costs, regardless of whether it prevails, has little incentive to settle its case or otherwise negotiate its claims. It would also promote litigation, for the sake of litigation, an obviously perverse result.

Here, the Association sought attorney fees related to what it incurred in bringing suit against Miller and Anderson for what the Association was required to pay in what should be characterized as routine and appropriate assessments contemplated by the CC&Rs, i.e., snow removal, insurance, and maintenance. To the extent the Association can be characterized as the prevailing party for that portion of the Association's assessment, it would be entitled to its attorney fees for recovering those charges from Miller and Anderson. The district court concluded the Association's counterclaims seeking recovery under claims of an open account, an account stated, and breach of contract all lacked merit. As a result, the Association did not prevail on any of those counterclaims. Because it did not prevail on those counterclaims, the Association may not recover its fees for bringing them.

To summarize our holding today: to the extent a contract affords a party the right to recover its attorney fees when it has prevailed on a specific claim, the overall prevailing party standard of Rule 54 does not apply. Rather, the determination of whether the party is entitled to recover its fees under the contract is a claim-by-claim determination that examines whether the party seeking fees recovered on each claim covered by the contractual attorney fee provision. The party seeking fees is only entitled to recover attorney fees under the contract for those claims on which it prevailed. Consequently, the Association may recover the attorney fees that it incurred in requiring

18

Miller and Anderson to pay a legitimate assessment sought by the Association. On remand, the district court will need to determine the amount of reasonable attorney fees incurred by the Association in its pursuit of its discrete recovery. Because the Association failed on all its other counterclaims, it is not entitled to recover attorney fees for those claims.

Given our decision today, we reject the Association's argument that section 12.05(F) of the CC&Rs entitles it to a *full* (rather than partial) award of attorney fees and costs. That said, the district court did not break down the amount of attorney fees it awarded to the Association, therefore, we cannot tell whether the district court only awarded attorney fees for that claim on which the Association prevailed. For the reasons discussed above, we hold that the Association is only entitled to its attorney fees under the CC&Rs for its claim that sought and obtained payment of those assessments for snow removal, insurance, and maintenance.

## C. Neither party is entitled to attorney fees under Idaho Code section 12-121.

Both parties have requested attorney fees and costs on appeal pursuant to Idaho Code section 12-121. Idaho Code section 12-121 permits an award of attorney fees if the appeal was "brought, pursued or defended frivolously, unreasonably or without foundation." Here, we conclude that neither party acted in such a manner. Accordingly, neither party is entitled to an award of attorney fees under section 12-121. However, Miller and Anderson prevailed on each issue raised on appeal, so they are entitled to costs as a matter of right. I.A.R. 40.

## IV. CONCLUSION

We affirm the district court's decision granting summary judgment to Miller and Anderson on the Association's breach of contract counterclaim. However, we vacate the district court's order awarding attorney fees and costs to the Association. We overrule *Farm Credit Bank* and its progeny to the extent they suggest a non-prevailing party may receive its attorney fees on claims it did not prevail on, and clarify that a party is only entitled to recover attorney fees incurred for the discrete claim it prevailed on. We remand this case to the district court for it to determine what, if any, reasonable attorney fees the Association incurred in recouping legitimate assessments charged to and unpaid by Miller and Anderson. Costs on appeal are awarded to Miller and Anderson as the prevailing parties as a matter of right. I.A.R. 40.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.

19